# IN THE UNITED STATE COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## No. 22-1680

SCOTT STOUFFER

Appellant

v.

UNION RAILROAD CO., et al

Appellees

*APPEAL FROM THE JUDGMENT IMPOSED ON MARCH 14, 2022, AT CIVIL ACTION NO. 2:20-CV-00133-RJC BY THE HONORABLE JUDGE COLVILLE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA*

## BRIEF FOR APPELLANT

Sammy Y. Sugiura (Pa. I.D. No. 209942)
J.P. Ward & Associates, LLC.
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Counsel for Appellants.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ......................................................................... i

STATEMENT OF JURISDICTION ...................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..........................2

STATEMENT IDENTIFYING ANY RELATED CASES AND PROCEEDINGS ....3

CONCISE STATEMENT OF THE CASE ...................................................4

    I.     RELEVANT FACTS ........................................................4

    II.    PROCEDURAL HISTORY ..............................................7

    III.   RULINGS PRESENTED FOR REVIEW ...................................8

ARGUMENT..............................................................................8

    I.     The District Court erred in determining Appellants did not allege sufficient facts to state a claim for relief for disparate impact discrimination pursuant to the ADEA ..........................8

    II.    The District Court erred by misapplying the standard set forth under Rule 12 of the Federal Rules of Civil Procedure when dismissing Appellants' claim for disparate impact discrimination under the ADEA ................................................................10

CONCLUSION ...............................................................................15

## <u>TABLE OF CITATIONS</u>

**<u>Cases</u>**                                                                                         **<u>Pages</u>**

*Bartell v. Community College of Philadelphia*,
      2021 WL 1561912, *5 (E.D. Pa. 2021) ...............................................10, 12

*Bell A. Corp. v. Twombly*,
      550 U.S. 544 (2007)........................................................................13, 14

*Bryan v. Gov't of Virgin Islands*,
      916 F.3d 242, 247 (3rd Cir. 2019). .............................................................10

*Davis v. Samuels*,
      962 F.3d 105, 111 n.2 (3d Cir. 2020)..........................................................1

*Eldeeb v. Potter*,
      675 F. Supp. 2d 521, 524 (E.D. Pa. 2009) ................................................15

*Hampton v. Borough of Tinton Falls Police Dep't*,
      98 F.3d 107, 112 (3d Cir. 1996).................................................................13

*Karlo v. Pittsburgh Glass Works*, LLC,
      849 F.3d 61, 69 (3d Cir. 2017)................................................10, 11, 13, 14

*Knox v. PPG Industries, Inc.*,
      2016 WL 279004, *7 (W.D. Pa. Jan. 22, 2016)........................................14

*Paine v. IKEA Holdings US, Inc.*,
      2020 WL 374581, *4 (E.D. Pa. 2020) ................................................. 11-12

*Reese v. Source 4 Tchrs.*,
      No. 17-4588, 2018 WL 3752987, at *3 (E.D. Pa. Aug. 8, 2018) ..............10

*Satterfield v. Consol Pa. Coal CO.*,
      No. 06-1261, 2007 WL 2728541, at *4 (W.D. Pa. Sept. 17, 2007).  ........11

*Smith v. City of Jackson*,
      544 U.S. 228, 240 (2005)...................................................................11, 13

*U.S. Express Lines Ltd. v. Higgins*,
      281 F.3d 383, 388 (3d Cir. 2002).............................................................13

**<u>Statutes</u>**

28 U.S.C. § 1331....................................................................................................1

28 U.S.C. § 1291....................................................................................................1

**<u>Rules</u>**

Fed. R. Civ. P. 12 ...........................................................................9, 12, 13, 14

i

## **STATEMENT OF JURISDICTION**

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court of Appeals has jurisdiction under 28 U.S.C. § 1291 to review the District Court's final order, which granted Appellees' Motion to Dismiss. This Court's review of a District Court's grant of a motion to dismiss is plenary. *See Davis v. Samuels*, 962 F.3d 105, 111 n.2 (3d Cir. 2020).

The Notice of Appeal was filed on April 13, 2022, within 30 days of the March 14, 2022, entry of Final Judgment, which qualifies as a final order.

**<u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>**

1.      Whether the District Court erred in determining Plaintiffs did not allege sufficient facts to state a claim for relief for disparate impact discrimination pursuant to the Age Discrimination in Employment Act?

2.      Whether the District Court erred by misapplying the standard set forth under Rule 12 of the Federal Rules of Civil Procedure in dismissing Plaintiffs claim for disparate impact discrimination pursuant to the Age Discrimination in Employment Act?

## STATEMENT IDENTIFYING ANY RELATED CASES AND PROCEEDINGS

The following cases have been filed in the United States District Court for the Western District of Pennsylvania and would likely be considered related cases and proceedings by this Court.

1. *Marsh v. Union Railroad Company, LLC et al.*, 2:20-cv-01145-RJC

2. *Scott v. Union Railroad Company, LLC et al.*, 2:20-cv-00254-WSH

3. *Prolenski et al. v. United States Steel Corporation et al.*, 2:21-cv-00545-WSH

**CONCISE STATEMENT OF THE CASE**

I.   **RELEVANT FACTS**

   A.   **Introduction**

Appellant Scott Stouffer, on behalf of himself and all others similarly situated, initiated an action in District Court because they were the victim of a discriminatory scheme by Appellees which attempted to remove the companies' oldest employees (*i.e.*, 40 years of age and older; hereinafter, "Senior Employees") as part of the companies' cost-cutting measures. Appendix 50-55. To understand the discriminatory scheme, an explanation on the relationship between United States Steel Corporation ("U.S. Steel"), Transtar, LLC ("Transtar"), and Transtar's subsidiary railroads ("U.S. Steel Railroads"), which includes Union Railroad Company, LLC ("Union Railroad"), is needed. App. 38-39.

   B.   **Joint-employer relationship between Appellees**

U.S Steel had control and influence over Transtar, Union Railroad (hereinafter, "UR"), and the other U.S. Steel railroads due to the nature of the integrated steelmaking process of the companies. App. 41-45. As a result, the parent-subsidiary relationship between U.S. Steel, Transtar, and the U.S. Steel Railroads is significant to this action because Transtar and the U.S. Steel Railroads are subsidiary companies who are unilaterally dependent upon U.S. Steel due to the integrated steelmaking process of those companies. *Id.* For U.S. Steel, the nature of the integrated steelmaking process ensures that it retains control and authority over Transtar and the U.S. Steel Railroads because it controls, among other things, assignment of management personnel, workplace resources, finances, and the organizational structure of the companies. *Id.* For example, U.S. Steel maintains control and authority over Transtar and the U.S. Steel Railroads by staffing Transtar's executive ranks with U.S. Steel managers and requiring the U.S. Steel

4

Railroads to report to those same, U.S. Steel managers. App. 41-42. U.S. Steel also exercises control over the employee screening process for Transtar and the U.S. Steel Railroads. App. 42-43. U.S. Steel also has direct control over how human resources and personnel-related issues are handled by Transtar and the U.S. Steel Railroads. *Id.* U.S. Steel's control over Transtar and U.S. Steel Railroads was also reflected in the financial reporting of the companies. App. 43-44. Through this hierarchy, U.S. Steel directly controls and influences the day-to-day operations of Transtar and the U.S. Railroads. App. 41-45.

In 2020, U.S. Steel went through a restructuring which resulted in the layoff of numerous U.S. Steel Railroads employees. App. 44. Each laid off employee of the U.S. Steel Railroads was provided a letter on U.S. Steel letterhead from a U.S. Steel Human Resources Representative, indicating that their employment was terminated due to a restructuring of U.S. Steel. *Id.* The laid off employees were also notified of an opportunity to apply for U.S. Steel's supplemental unemployment benefit program, apprised of the status of their existing benefits; and required to sign a release of claims against U.S. Steel if they agreed to accept post-employment benefits. *Id.* Each laid off employee of the U.S. Steel Railroads was also provided with a document pursuant to the Older Worker Benefit Protection Act ("OWBPA"). App. 44-45. The OWBPA Notice stated U.S. Steel had decided to implement a reduction in force due to poor business conditions and listed "Transtar & Logistics" as a department of U.S. Steel. *Id.* The notice went on to list the individuals who were "selected for layoff or termination" and those who were "not selected for layoff or termination. App. 44-45, 60. The OWBPA Notice was created by U.S. Steel and contained decisional unit information comprised of employees from Transtar, Delray Connecting Railroad Company, Fairfield Southern Company, Gary Railway Company, Lorain Northern Company, Texas & Northern Railway Company, The Lake Terminal Railroad Company, and Union Railroad.

*Id.* Thus, U.S. Steel's OWBPA Notice reflects the true operating structure of the company, the dependency of Transtar and the U.S. Steel Railroads on U.S. Steel, and the existence of a joint-employer relationship between U.S. Steel, Transtar, and the U.S. Steel Railroads. *Id.*

### C. Appellees' facially neutral policy which disproportionately impacted older employees

In the present case, Appellants have identified the cost-cutting measures of U.S. Steel as the facially neutral policy which disproportionately affected the Senior Employees. App. 50-55. In 2013, the U.S. Steel Defendants faced a financial reckoning that threatened the way the companies had operated for decades. App 48-49. During this period, the U.S. Steel Defendants were forced to decide between making substantive changes to their core businesses or undergo cost-cutting measures. *Id.* Publicly, the U.S. Steel Defendants marketed a plan known as the Carnegie Way, which was a grand attempt by the U.S. Steel Defendants to transform the companies during a downturn in the steel industry. *Id.*

Running a railroad typically presents numerous challenges, and in 2013 U.S. Steel viewed the looming costs of employing an aging workforce as its biggest challenge. App. 45-48. As part of the Carnegie Way's cost-cutting measures, managers at Transtar and Union Railroad began to target Senior Employees in a multitude of ways. App. 50. Managers targeted Senior Employees by terminating their employment without following the applicable written disciplinary policies and by manipulating the applicable disciplinary policies to ensure Senior Employees were issued a disproportionately higher number of demerits for the same or similar infractions committed by non-Senior Employees. *Id.* Managers also targeted Senior Employees by removing them from service by issuing them 60 demerits or more for a single infraction that would be typically handled through verbal counseling or an informal warning. *Id.* Furthermore, Senior employees were targeted by Managers by being forced to sign "last chance" agreements (*i.e.*, agreement in which

6

any subsequent workplace infraction would result in the termination of employment) to ensure procedural protections contained within applicable collective bargaining agreements and other contracts could not be raised by those Senior Employees. *Id.* Managers additionally targeted Senior Employees by failing to remove prior demerits from the files of Senior Employees in a timely manner. *Id.*

Appellees' targeting of the Senior Employees as part of the Carnegie Way cost-cutting measures relied on the most extreme methods to ensure that a disproportionate number of Senior Employees were included as part of these cost-cutting measures. App. 51. 54-55, 57. Furthermore, General Superintendents (*i.e.,* upper-level executives at the U.S. Steel Railroads) carried out this facially neutral policy in similar ways which disproportionately affected Senior Employees. The actions of the General Superintendents included but were not limited to subjecting the Senior Employees with round the clock surveillance. *Id.* Supervisors would often hide behind objects and monitor the Senior Employees from a distance or at night. *Id.* In other instances, Supervisors would continually follow Senior Employees in company issued trucks. *Id.* The manner and method in which Appellees' facially neutral cost-cutting policy (aka the Carnegie Way) was implemented by the Appellees was discriminatory and disparately impacted Senior Employees in a way that violated the ADEA. App. 50-55, 57.

II.    **PROCEDURAL HISTORY**

This dispute was initiated by Appellants on January 29, 2020, when Charles Marsh filed a complaint in the United States District Court for the Western District of Pennsylvania ("District Court") at Civil Action No. 2:20-cv-00133-RJC (Doc. No. 1).  On April 17, 2020, Scott Stouffer was substituted as Lead Plaintiff in that action and an Amended Complaint was filed (Doc. No. 18).  Both complaints were filed pursuant to 29 CFR § 1626.18(b) as more than 60 days had passed since the plaintiffs had filed their Charge of Discrimination with the Equal Employment Opportunity Commission.  Thereafter, all the defendants filed motions to dismiss the First Amended Complaint (Doc. Nos. 23, 25).  On March 30, 2021, the District Court issued a Memorandum Opinion, stating that the plaintiffs had "set forth a viable ADEA disparate impact claim", and gave leave for the plaintiffs to file another amended complaint to address the joint-employer issue (Doc. 57).  The Second Amended Complaint was filed on April 30, 2021 (Doc. 69).  On March 14, 2022, the District Court granted the defendant's motion to dismiss (Doc. No. 93).  This appeal by Appellant Scott Stouffer, individually and on behalf of all others similarly situated, was timely filed on April 13, 2022 (Doc. No. 96).

III.    **RULINGS PRESENTED FOR REVIEW**

The District Court's rulings at Doc. Nos. 93, 94, and 95 (C.A. No. 2:20-cv-00133-RJC) constitute the rulings presented for review in this appeal.

## <u>SUMMARY OF ARGUMENT</u>

The District Court's decision to dismiss Appellants' complaint relied upon misapplications of the controlling legal standard and misstatements of Appellants' legal claims. This brief addresses the two ways in which the District Court erred, and the bases upon which Appellants seek relief from this Court.

The District Court first erred in determining that Appellants did not allege sufficient facts to state a claim for relief for disparate impact discrimination pursuant to the ADEA. In reaching its decision, the District Court misinterpreted Appellants' claims on the theory that a plaintiff cannot raise a cognizable ADEA disparate impact claim when the facially neutral policy was created to reduce costs. In short, the District Court believed that if an employer could justify its discriminatory actions by pointing to financial motivations, a plaintiff would be barred from recovery. This theory, however, ignores the legal standard in the Third Circuit: disparate impact claims concern whether the implementation of a facially neutral policy (but not the impetus for the creation of that facially neutral policy) results in an adverse effect which disproportionately impacts a protected group like the Senior Employees in this dispute.

The District Court also erred by misapplying the applicable standard when reviewing motions to dismiss that are filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Here, the District Court repeatedly relied upon decisions which utilized a summary judgment standard when choosing to dismiss Appellants' claims. As a result, the District Court misapplied the applicable standard when reviewing Appellees' motion to dismiss and denied Appellants the opportunity to conduct discovery; an opportunity which was provided to the parties in the decisions the District Court relied upon. Accordingly, the District Court's decision should be reversed, and Appellants should be given the opportunity to conduct discovery.

## <u>ARGUMENT</u>

I.   **The District Court erred in determining Appellants did not allege sufficient facts
to state a claim for relief for disparate impact discrimination pursuant to the ADEA**

The law is clear: to establish a prima facie case of age discrimination based on disparate impact, a plaintiff must "(1) identify a specific, facially neutral policy, and (2) proffer statistical evidence that the policy caused a significant age-based disparity." *Bartell v. Community College of Philadelphia*, 2021 WL 1561912, \*5 (E.D. Pa. 2021) (citing *Karlo v. Pittsburgh Glass Works*, LLC, 849 F.3d 61, 69 (3d Cir. 2017). However, at the pleading stage, "a plaintiff need only plead that a facially neutral practice's adverse effects fall disproportionately on a group protected by [the ADEA] to which the plaintiff belongs." *Bartell* 2021 WL 1561912, \*5 (*quoting Reese v. Source 4 Tchrs.*, 2018 WL 3752987, at \*3 (E.D. Pa. Aug. 8, 2018)). A facially neutral policy can be a policy that is alleged to be pretext for intentional discrimination. *Bartell* 2021 WL 1561912, \*5 (*citing Karlo*, 849 F.3d at 69). Additionally, a facially neutral employment policy is one that does not classify employees based on age or other protected categories. *Bartell* 2021 WL 1561912, \*5 (E.D. Pa. 2021) (citing *Bryan v. Gov't of Virgin Islands*, 916 F.3d 242, 247 (3d Cir. 2019). By dismissing the Second Amended Complaint, the District Court ignored recent decisions in the Third Circuit which have defined the pleadings standards for disparate impact claims. *See e.g., Bartell* 2021 WL 1561912, \*5.

The case in *Bartell* is similar to the dispute here as it also involved a group of older plaintiffs (*i.e.*, over 40 years old) who lost their job due to cost-cutting plans enacted by their employer. *Bartell*, 2021 WL 1561912, \*1. The plaintiffs filed class and collective action age discrimination claims against the Community College of Philadelphia under the ADEA and Pennsylvania Human Relations Act ("PHRA"). *Id.* In denying the defendant's motion to dismiss, the court held that the plaintiffs' disparate impact claims could proceed even though the facially

neutral policy in question only applied to individuals who were over the age of forty-five and was enacted to cut costs. *Id.* at 1, 5-6 (citing to *Karlo* and its application of the ruling in *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971) which directed all courts to focus the analysis of disparate impact claims to redressing "polices that are 'fair in form, but discriminatory in operation'"). The court noted that even though the facially neutral policy in question considered age and finances, the application of that facially neutral policy "did not distinguish among the College's employees based on age or any other protected category." *Id.* at 5. The court reminded the defendant of the Third Circuit's established standard that "…on a motion to dismiss, there is no need for plaintiff to establish a *prima facie* case of age discrimination, or to tailor his pleadings to the specific elements typically required of an employment discrimination plaintiff." *Id.* at 3 (*quoting Satterfield v. Consol Pa. Coal Co.*, 2007 WL 2728541, at *4 (W.D. Pa. 2007) (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508–15 (2002)).

The ruling in *Paine v. IKEA Holdings US, Inc.* should be considered when reviewing this appeal. In *Paine*, defendant sought dismissal of plaintiffs' claims, arguing that facially neutral policies could not be the source for intentional and disparate impact claims. *Paine v. IKEA Holdings US, Inc.*, 2020 WL 374581, *3-4 (E.D. Pa. 2020). The policies in *Paine* were similar to the demerit policy in this dispute in that those policies applied to all employees and the discriminatory application of those policies resulted in adverse effects which disproportionately impacted older employees (*i.e.*, over 40 years old). *Paine*, 2020 WL 374581 at *2-3. The court in *Paine* noted that many courts, including the U.S. Supreme Court, have recognized that the same set of facts can give rise to a disparate impact and a disparate treatment case. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 231 (2005). As a result, disparate impact claims can be based on a

facially neutral policy that is also alleged to be a pretext for intentional discrimination. *Paine*, 2020 WL 374581 at *4.

Appellants here have identified a facially neutral policy – the Carnegie Way and its cost-cutting measures – which was applied in a discriminatory manner and, as a result, disproportionately impacted the Senior Employees in an adverse way. App. 48-55. In dismissing Appellants' claims, the District Court essentially reasoned that the Appellants could not cite cost-cutting policies as the basis for a facially neutral policy. App. 16-17, 19. In doing so, the District Court ignored the Third Circuit standards for disparate impact claims, which were reiterated in *Bartell* and *Paine*. *See e.g., Bartell*, 2021 WL 1561912 at 3, 5-6 (*citations omitted*). When reviewing the operative complaint, Appellants have met the pleading standards for a disparate impact claim pursuant to the ADEA against all Appellees by (1) establishing the joint-employer relationship between the Appellees, (2) providing background on Appellees' cost-cutting measures (*i.e.,* Carnegie Way), (3) describing how Appellees applied the cost-cutting measures in a discriminatory way, (4) noting the steps that Appellees took to hide their discriminatory application of the Carnegie Way, and (5) how Appellees' actions disproportionately impacted the Senior Employees. App. 41-45, 48-49, 50-51, 53, 54-55, 57. As a result, the District Court's decision to dismiss Count II of the Second Amended Complaint should be reversed.

## II. The District Court erred by misapplying the standard set forth under Rule 12 of the Federal Rules of Civil Procedure when dismissing <u>Appellants' claim for disparate impact discrimination under the ADEA</u>

The District Court erred by misapplying the standard set forth under Rule 12 of the Federal Rules of Civil Procedure and dismissing Plaintiffs claim for disparate impact discrimination. In deciding on a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well pled

factual allegations in the complaint and views them in a light most favorable to the Plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint doesn't need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Bell A. Corp. v. Twombly*, 550 U.S. 544 (2007). The District Court erred by misapplying the standard set forth under Rule 12 of the Federal Rules of Civil Procedure by dismissing Plaintiff's claim for disparate impact discrimination pursuant to the ADEA. The cases cited by the District Court reflect this misapplication of the controlling standard.

The District Court improperly relied upon the decision in *Hampton v. Borough of Tinton Falls Police Dep't* because that matter involved a dispute in which the parties took discovery, and plaintiff's claims were dismissed pursuant to a summary judgment standard. App. 18; *Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 112 (3d Cir. 1996). As a result, *Hampton* is distinguishable from Appellants' dispute as the District Court was not reviewing a motion for summary judgment. Moreover, the decision in *Hampton* simply affirmed the district court's decision without providing any additional analysis. *Id.* In short, the District Court here relied upon an opinion whose facts had no application to Appellants' dispute. *Id.*

The District Court wrongly relied upon other decisions dealing with a summary judgment standard when deciding to dismiss Appellants' claims. App. 18; *City of Jackson*, 544 U.S. at 240; *Karlo*, 849 F.3d at 69. In *Smith,* the Supreme Court held that disparate impact liability under the ADEA is narrower than under Title VII in large part because of the ADEA's reasonable-factor-other-than-age (hereinafter, "RFOA") affirmative defense. *Smith*, 544 U.S. at 253. However, *Smith* is distinguishable from the present case because it was decided on a motion for summary judgment, and after discovery had been conducted by both sides. *Id.* at 231. *Karlo*, was also decided on a summary judgment standard after the parties had conducted discovery. *Karlo*, 849

F.3d at 69.  As a result, the nearly all the cases that the District Court relied upon were decided using a summary judgment standard instead of a motion to dismiss standard pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Twombly*, 550 U.S. at 556 (*Twombly* standard requires only that the plaintiff set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of the claim]").

Lastly, the District Court relied upon *Knox v. PPG Industries, Inc.*, in which the court ruled on a motion to dismiss.  *Knox v. PPG Industries, Inc.*, 2016 WL 279004, *7 (W.D. Pa. 2016).  However, unlike the present case, the plaintiff's claims in *Knox* primarily focused on violations of Title VII, and the court noted that the plaintiff had alleged scant evidence to support their ADEA claims.  *Id.*  Furthermore, *Knox* was not a collective or class action matter, which is again distinguishable from the present case.  *Id.*  Accordingly, reversing the District Court's decision to grant Appellees' motion to dismiss is paramount given that the majority of the cases relied upon by the District Court utilized the standard set forth under Rule 12 of the Federal Rules of Civil Procedure.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the District Court's Final Order and Judgment, remand this case, and permit Appellants the opportunity to conduct discovery on their ADEA disparate impact claim.  In the alternative, Appellants should be given the opportunity to amend their complaint one last time given that the District Court initially determined that Appellants had set forth a viable ADEA disparate impact claim.  App. 84; *see Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."); *Eldeeb v. Potter*, 675 F. Supp. 2d 521, 524 (E.D. Pa. 2009) (recognizing Third Circuit standard permitting plaintiff right to amend, especially when dealing with civil rights-related claims).

Date: July 25, 2022

Respectfully Submitted,

**J.P. WARD & ASSOCIATES, LLC.**

*/s/ Sammy Y.  Sugiura*
Sammy Y. Sugiura
(Pa. I.D. No. 209942)

J.P. Ward & Associates, LLC.
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Counsel for Appellants.

# IN THE UNITED STATE COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## No. 22-1680

SCOTT STOUFFER

Appellant

v.

UNION RAILROAD CO., et al

Appellees

## *APPEAL FROM THE JUDGMENT IMPOSED ON MARCH 14, 2022, AT CIVIL ACTION NO. 2:20-CV-00133-RJC BY THE HONORABLE JUDGE COLVILLE OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA*

## APPENDIX – VOLUME 1 OF 2

Sammy Y. Sugiura (Pa. I.D. No. 209942)
J.P. Ward & Associates, LLC.
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Counsel for Appellants.

## TABLE OF CONTENTS

VOLUME 1

**NOTICE OF APPEAL (Doc. No. 96)** ...............................................................................1

**DISTRICT COURT ORDER (Doc. No. 93)** ....................................................................2

**DISTRICT COURT'S FINAL JUDGMENT (Doc. No. 94)** .........................................4

**DISTRICT COURT OPINION (Doc. No. 95)** ................................................................5


VOLUME 2

**DOCKET ENTRIES** ......................................................................................................23

**SECOND AMENDED COMPLAINT (Doc. No. 69)** ...................................................37

**DISTRICT COURT OPINION (Doc. No. 57)** .............................................................61

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT STOUFFER, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNION RAILROAD COMPANY, LLC, TRANSTAR, LLC, UNITED STATES STEEL CORPORATION, and SMART TRANSPORTATION DIVISION,<br><br>Defendants. | CIVIL ACTION NO. 2:20-CV-00133-RJC<br><br>ADEA COLLECTIVE ACTION |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff Scott Stouffer, on behalf of himself and all others similarly situated, appeals to the United States Court of Appeals for the Third Circuit from the Order and Judgment entered on March 14, 2022 (Doc. Nos. 93 and 94), granting the Defendants' Motion to Dismiss (Doc. No. 72) and entering judgment in favor of the Defendants and dismissing Counts I and II of the Second Amended Complaint (Doc. No. 69).

Respectfully submitted,

/s/ Sammy Y. Sugiura
Sammy Y. Sugiura
PA I.D. No. 209942
ssugiura@cohengrace.com
Mark A. Grace
PA I.D. No. 78701
mgrace@cohengrace.com
COHEN & GRACE, LLC
105 BRAUNLICH DRIVE
SUITE 300
PITTSBURGH, PA 15237
TELEPHONE: (412) 847-0300
FACSIMILE: (412) 847-0304
**COUNSEL FOR PLAINTIFF**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SCOTT STOUFFER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 2:20-cv-00133-RJC |
| vs. | ) ) | |
| UNION RAILROAD COMPANY, LLC., TRANSTAR, LLC, UNITED STATES STEEL CORPORATION and SMART TRANSPORTATION DIVISION, | ) ) ) ) ) | |
| Defendant. | ) | |

## **ORDER**

AND NOW, this 14th day of March, 2022, for the reasons stated in the Opinion filed contemporaneously hereto, it is hereby ORDERED that a Motion to Dismiss (ECF No. 72) filed by Defendants Union Railroad Company, LLC, Transtar, LLC, and United States Steel Corporation is hereby GRANTED IN PART AND DENIED IN PART as follows:

1). It is DENIED with respect to the challenge to the Court's jurisdiction pursuant to Federal Rule of Civil Procedure 12 (b)(1).

2). It is DENIED with respect to the challenge to the sufficiency of the joint employment and collective action allegations.

3). It is GRANTED with respect to dismissal for failure to prosecute as to Charles Marsh, and his claims are dismissed with prejudice.

1

4). It is GRANTED for failure to state a claim under the ADEA at Counts I and II pursuant to Federal Rule of Civil Procedure 12(b)(6).  This case is hereby DISMISSED in its entirety with prejudice.  The Clerk of Court shall mark this case as CLOSED.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

cc/ecf: All counsel of record

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT STOUFFER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | 2:20-cv-00133-RJC |
| vs. | ) ) ) | |
| UNION RAILROAD COMPANY, LLC., TRANSTAR, LLC, UNITED STATES STEEL CORPORATION and SMART TRANSPORTATION DIVISION, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## JUDGMENT ORDER

FINAL JUDGMENT is hereby entered pursuant to Rule 58 of the Federal Rules of Civil Procedure. This case has been marked closed.

IT IS SO ORDERED.

Dated: March 14, 2022

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

cc/ecf: All counsel of record

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SCOTT STOUFFER, individually and on ) 
behalf of all others similarly situated, )
                                            )
              Plaintiff, )     2:20-cv-00133-RJC
                                            )
   vs. )
                                            )
UNION RAILROAD COMPANY, LLC., )
TRANSTAR, LLC, UNITED STATES )
STEEL CORPORATION and SMART )
TRANSPORTATION DIVISION, )
                                            )
            Defendant. )

## <u>OPINION</u>

Robert J. Colville, United States District Judge

Before the Court is a Motion to Dismiss (ECF No. 72) filed by Defendants Union

Railroad Company, LLC ("the Railroad"), Transtar, LLC ("Transtar"), and United States Steel

Corporation ("U.S. Steel") (collectively, the "Non-Labor Defendants"). Defendants' Motion has

been fully briefed and is ripe for disposition.

## I.    Factual Background & Procedural History

On January 29, 2020, this case was initiated by plaintiff Charles Marsh (ECF No. 1), and

on April 17, 2020 a First Amended Complaint was filed, which added Scott Stouffer as a named

plaintiff. (ECF Nos. 18, 19). Thereafter, all Defendants filed motions to dismiss the First

Amended Complaint, and on March 30, 2021 this Court issued a Memorandum Opinion (Doc.

No. 57) and related orders which granted leave to file a Second Amended Complaint.[1] That

---

[1] Previously-named defendant labor union Smart Transportation Division's motion to dismiss was granted. (ECF No. 58).

1

Second Amended Complaint ("SAC") was filed on April 30, 2021, and is the operative pleading. (ECF No. 69). Additionally, on March 30, 2021, the Court issued an order to show cause directing Marsh to show cause why the Court should not dismiss with prejudice his claims stated in the original complaint. (ECF No. 59).

The allegations in the SAC are as follows. Plaintiff, Scott Stouffer, brings this action for violations of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), as a collective action pursuant to 29 U.S.C. § 626(b), incorporating section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), on behalf of himself individually and on behalf of those similarly situated, specifically, all former employees of the Railroad who, at the time of their termination, were over age 40 and were improperly targeted for termination due to their age ("Senior Employees"). Plaintiff alleges ADEA violations based on disparate treatment (SAC ¶¶ 111-116) and disparate impact (SAC ¶¶ 117-123) (Counts I and II, respectively).

Plaintiff is a resident of Monongahela, Pennsylvania. (SAC ¶ 7). On or about December 2, 2018, at the age of 41, Scott Stouffer was terminated from Railroad where he worked as a brakeman for more than 8 years. (SAC ¶¶ 91, 95). The Railroad is a wholly owned subsidiary of Transtar. (SAC ¶ 24). In 1988, U.S. Steel created Transtar as a holding company for its railroad transportation business and as part of the company's financial restructuring process. (SAC ¶ 24). The Railroad and Transtar are wholly owned subsidiaries of and operate in concert with U.S. Steel. (SAC ¶ 21). The following companies comprise U.S. Steel's railroad transportation business (i.e., Transtar): Delray Connecting Railroad Company, Fairfield Southern Company, Gary Railway Company, Lorain Northern Company, Texas & Northern Railway Company, The Lake Terminal Railroad Company, and Defendant Union Railroad Company (collectively "U.S. Steel Railroads"). (SAC ¶ 23).

It is alleged that after years of financial difficulty in the steel industry, the U.S. Steel Defendants engaged in a discriminatory scheme which targeted employees who were part of the U.S. Steel Defendants' railroad transportation business and were 40 years or older at the time of their firing ("Senior Employees"). (SAC at ¶¶49, 71, 73-81, 96-103). The scheme involved targeting Senior Employees with sham workplace violations and forcing them to sign last chance agreements so that they could be fired without involvement of the company's grievance process or any other legal proceeding. (SAC at ¶¶ 73-81, 96-103). Senior Employees who were targeted by this discriminatory scheme were fired for alleged performance issues. *Id*. The stated reason for the firing of these Senior Employees was pretext and a means for the U.S. Steel Defendants to hide their discriminatory plan. (SAC at ¶¶73-81, 91, 96-98, 112-115, 118-122). Plaintiff alleges that the discriminatory scheme was part of the Carnegie Way plan, which promoted cost-cutting measures throughout U.S. Steel, Transtar, and all the companies which comprise U.S. Steel's railroad transportation business (i.e., Transtar). (SAC at ¶¶ 56-57, 65, 69, 71, 73-78). It is believed that this discriminatory scheme began in 2013, was controlled by U.S. Steel and Transtar executives, and implemented on the ground by managers at the U.S. Steel Railroads. (SAC at ¶¶18-20, 24-48, 63-65, 73-81). When the steel industry collapsed in 2015, the U.S. Steel Defendants enacted extreme cost-cutting measures under the guise of the Carnegie Way, which included enacting massive layoffs.  (SAC at ¶71).

Stouffer alleges he was a victim of this discriminatory scheme that targeted Senior Employees. (SAC at ¶¶82-96, 103, 108-110, 112-115, 118-123). Stouffer proposes he serve as a representative of a class of former Senior Employees of the U.S. Steel Defendants who were fired as part of the companies' discriminatory scheme to fire employees who were 40 years of age or older. (SAC at ¶¶ 73-81, 96-103, 108-110).

3

Stouffer was born on June 5, 1977. (SAC ¶ 82). On June 7, 2010, Stouffer was hired by the Railroad as a brakeman. (SAC ¶ 83). On March 22, 2017, when he was 39, Plaintiff was working a scheduled 10-hour shift when his supervisor asked him to punch out early without explanation. Due to his frustration, Plaintiff muttered "jagoff" under his breath as he walked away to clock out. (SAC ¶ 85). Although Stouffer immediately apologized, Plaintiff's supervisor reported the incident and he was removed from service later that night. (SAC ¶ 85).

The following week, Plaintiff met with Railroad management and his union representative to address the incident. (SAC ¶ 86). During the meeting, Plaintiff was told he had two options: 1) sign a last chance agreement; or 2) go to a hearing and get fired. (SAC ¶ 86). Stouffer's union representative failed to defend him during this meeting and was unable to explain the company's insistence on using a last chance agreement (lasting for three years) for an employee with no prior work issues. As a result, Stouffer felt he had no other choice but to sign the last chance agreement. (SAC ¶ 87). It is now believed that the company insisted on Stouffer signing a 3-year last chance agreement to ensure that he would never reach certain accrual milestones for post-employment benefits; accrual milestones Stouffer could only achieve if he remained employed as a Senior Employee. (SAC ¶ 88).

After signing the last chance agreement, Stouffer was assessed with 60 demerits for the incident. He alleges that younger employees were never issued a similar number of demerits for the same or a substantially similar incident. (SAC ¶ 89). After the last chance agreement was executed, Stouffer was subjected to a hostile work environment where, among other things, he was micromanaged by his supervisor, subject to surreptitious surveillance, denied meal periods, refused headlamp batteries, and forced to work shifts that were not properly staffed. Younger employees were never treated in the same or a substantially similar way during the relevant period of these claims. (SAC ¶ 90).

4

On December 2, 2018, Plaintiff was working on a train driven by a younger (under age 40) co-worker who caused the train to run through a switch. (SAC ¶ 91). Plaintiff was charged with multiple "cardinal rule" violations and immediately terminated. Conversely, Plaintiff's younger co-worker who was principally responsible for the violation was assessed substantially less demerits and kept his job with the Railroad. (SAC ¶ 91).

When Plaintiff sought an explanation for his termination, the Railroad cited the last chance agreement and refused to speak to him. Stouffer was also denied the opportunity to review his younger co-worker's statement about the incident. (SAC ¶ 92). In a formal dismissal letter dated December 6, 2018, the Railroad reminded Plaintiff that his last chance agreement forbade him, or anyone acting on his behalf, from challenging his termination. (SAC ¶ 93). Following his termination, the U.S. Steel Defendants intentionally interfered with Stouffer's access to his post-employment benefits. (SAC ¶ 94). At the time of his firing, Plaintiff was 41 years old. (SAC ¶ 95).

## II.     Legal Standard

In their motion to dismiss, Non-Labor Defendants rely on Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(f), and 41(b).

### A. Federal Rules of Civil Procedure 12(b)(1)

A court must grant a motion to dismiss under Rule 12(b)(1) if it determines that it lacks subject matter jurisdiction over a claim. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D. N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)). Rule 12(b)(1) motions can raise either a facial or factual challenge to the Court's subject-matter

5

jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack challenges the sufficiency of the pleadings, whereas a factual attack challenges the sufficiency of jurisdictional facts. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). In resolving a facial attack, the Court must accept Plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When resolving a factual attack, however, the Court may weigh and consider evidence outside the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550
U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully. Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

"[A]s a general matter, a district court ruling on a motion to dismiss may not consider
matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,
1426 (3d Cir. 1997). "However, an exception to the general rule is that a document integral to or
explicitly relied upon in the complaint may be considered without converting the motion to
dismiss into one for summary judgment." *Id.* (internal quotation omitted).[2]

### C. Federal Rule of Civil Procedure 12(f)

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an
insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed R.
Civ. P. 12(f). The purpose of a Rule 12(f) motion to strike is "to clean up the pleadings,
streamline litigation, and avoid unnecessary forays into immaterial matters." *Tennis v. Ford
Motor Co.*, 730 F. Supp. 2d 437, 443 (W.D. Pa. 2010) (quoting *Natale v. Winthrop Res. Corp.*,
No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008)) (internal quotations omitted).

---

[2] Non-Labor Defendants have attached to their motion the collective bargaining agreement, the URR demerit policy,
Stouffer's Waiver of Investigation/Last Chance Agreement, termination letter, and charge of discrimination. (ECF
Nos. 72-3 through 72-7).

## III. Discussion

### A. RLA Preclusion

First, because they challenge the Court's jurisdiction over this matter, we will address the Non-Labor Defendants' argument that the RLA preempts and precludes all claims against them and thus, we lack subject matter jurisdiction. Defendants acknowledge that the court previously addressed this issue in our March 30, 2021 Memorandum Opinion (ECF No. 57) but ask the Court to revisit this ruling because we have a continuing duty to assess jurisdiction. We acknowledge this duty but decline to reverse our prior ruling; there is no arguable change in the case law in this area, and thus we stand behind our prior ruling. *Malobabich v. Norfolk Southern Corp.*, No. 2:11-cv-112, 2001 WL 1791306 (W.D. Pa. May 10, 2011). Again, we note Stouffer alleges his discipline and termination was part of "a pretextual scheme to terminate [the Railroad] employees over age 40" "on the basis of their age" in violation of the ADEA. (SAC ¶¶ 2, 7). Unlike *Malobabich*, Stouffer challenges the motives of the Non-Labor Defendants in taking adverse action, in violation of rights or obligations that exist independently of the CBA.

Accordingly, the motion to dismiss the SAC will be denied to the extent it relies upon Federal Rule of Civil Procedure 12 (b)(1).

### B. Defendant Transtar and US Steel as Employer

Under the ADEA, only employers may be held liable. 29 U.S.C. § 623*; Lewis v. Vollmer of America*, No. 05-1632, 2008 WL 355607, *1 (W.D. Pa. Feb. 7, 2008). Non-Labor Defendants argue that Defendants Transtar and U.S. Steel must be dismissed because they did not employ Stouffer, and thus, the SAC fails to plead a claim. Fed. R. Civ. P. 12(b)(6). Plaintiff has alleged that the case may proceed under a joint employer theory of liability, citing, inter alia, *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119-120 (3d Cir. 2013). Such an

8

inquiry is generally left to further development of the record and upon the filing of a motion for summary judgment. In *Washington v. Client Network Servs. Inc*., 590 F. App'x 126, 130 (3d Cir. 2014), the court explained:

> Whether Washington was employed by Amtrak as well as CNSI for these purposes turns on a number of factors, including Amtrak's level of control over Washington, which entity hired and paid him, and which entity generally controlled his day-to-day activities. *See Covington [v. Int'l Ass'n of Approved Basketballl Officials]*, 710 F.3d at 119 [3d Cir. 2013], (citing *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)). Under this standard, "the precise contours of an employment relationship can only be established by a careful factual inquiry," *Graves [v. Lowery]* , 117 F.3d [723] at 729 [3d Cir. 1997], and the issue thus "may generally require resolution at the summary judgment stage, rather than at the motion to dismiss stage," *Mariotti v. Mariotti Bldg. Prods., Inc*., 714 F.3d 761, 768 n. 5 (3d Cir.2013), cert. denied, —— U.S. ——, 134 S.Ct. 437, 187 L.Ed.2d 284 (2013).

In addition to being guided by this case law, we note that the SAC alleges the U.S. Steel Defendants control employee records as well as share management structure whereby U.S. Steel and Transtar can hire and fire, as well as supervise and hold influence over the employees of the railroads. (SAC at ¶¶ 27-32, 33-38). While a fully completed evidentiary record may not support the joint employer theory, these allegations are sufficient to state a claim.

Hence, because the nature of the employment relationship requires a more in-depth factual inquiry, and Stouffer sufficiently alleged such a claim, the motion to dismiss the SAC on the grounds of failure to plead joint employment is denied.

### C. Sufficiency of the Pleading

Next, we address Defendants' argument that the ADEA claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because the allegations are conclusory, contradictory and devoid of facts, and further, age-based discrimination – as opposed to cost-cutting, pension and benefit-related motivations--has not been sufficiently alleged. This argument, unlike the others, has merit.

9

At the outset we note that defendants argue that the prior iterations of Plaintiff's complaint, i.e. the original complaint and the First Amended Complaint, should be considered when making a determination of whether the claims stated are "plausible." We find this line of argument unpersuasive, if not inappropriate, given that the Court is charged with the task of determining whether the SAC, *the operative pleading*, states viable claims with sufficient particularity to survive dismissal. At most the amendments speak to whether Stouffer should be permitted to amend his complaint yet again.[3] Accordingly, the Court will not consider previously asserted complaints in this matter in deciding the sufficiency of the SAC.

The ADEA makes it unlawful for an employer "to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). "The ADEA's prohibition is designed to prevent older workers from 'being deprived of employment on the basis of inaccurate and stigmatizing stereotypes,' such as the belief that 'productivity and competence decline with old age.'" *Andras v. Borough of Laceyville, Pa.,* 2015 WL 4488359, *2 (M.D. Pa. July 23, 2015) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). "Accordingly, the Act prohibits employers from 'rely[ing] on age as a proxy for an employee's remaining characteristics, such as productivity.'" *Kelly v. Moser, Patterson, & Sheridan, LLP,* 348 Fed. Appx. 746, 749, 2009 WL 3236054 *2 (3d Cir. Oct. 9, 2009) (quoting *Hazen*, 507 U.S. at 611). The ADEA requires employers to "instead focus on those [non-age] factors directly." *Hazen*, 507 U.S. at 611. In order to state a prima facie case for age discrimination under the ADEA, a plaintiff must allege that (1) she is within the protected age class, i.e. over forty years old; (2) she was qualified for the position at issue; (3) she was dismissed despite being qualified; and (4) she was replaced by a

---

[3] The Court has not been asked to grant leave to amend, and even if it were, said request would be denied on the grounds of futility and because Plaintiff has previously been afforded an opportunity to amend his claims. Fed. R. Civ. P. 15(a)(2).

person sufficiently younger to permit an inference of age discrimination. *Andras*, 2015 WL 4488359, *4 (M.D. Pa. July 23, 2015).

To succeed on a disparate treatment claim, a plaintiff must demonstrate "the employee's protected trait actually played a role" and "had a determinative influence on the outcome" of the decisionmaking process that led to the challenged action. *Hazen Paper*, 507 U.S. at 610, 113 S.Ct. 1701; *see* 29 U.S.C. § 623(a) ("It shall be unlawful for an employer ... [to] discriminate against any individual ... *because of* such individual's age ...." (emphasis added)). In other words, age must have been a "but-for" cause of the action, and the plaintiff bears the burden of proving so. *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). Accordingly, "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Hazen Paper*, 507 U.S. at 609, 113 S.Ct. 1701. The Supreme Court has distinguished between age and years of service, concluding that "it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Id.* at 611, 113 S.Ct. 1701; *see also Tomasso v. Boeing Co.*, 445 F.3d 702, 710 n.8 (3d Cir. 2006) (finding a decision to reduce layoff protection for employees based on years of service did not equate to age-based discrimination).

When an employer's action is based on years of service, it does not involve the inaccurate and stigmatizing age-based stereotypes the ADEA intended to address. *Hazen Paper*, 507 U.S. at 611, 113 S.Ct. 1701. For that reason, termination based solely on financial considerations related to years of service is not actionable under the ADEA. *See id.* at 612–13, 113 S.Ct. 1701. And although an employer may not use a direct proxy for age to discriminate surreptitiously against older workers, an employee's tenure (without more) is not such a direct proxy. *See id.* at 611–13,

11

113 S.Ct. 1701; *cf. Erie Cty. Retirees Ass'n v. Cty. of Erie*, 220 F.3d 193, 211 (3d Cir. 2000)

(recognizing Medicare eligibility as a proxy for age because it necessarily follows turning 65).

 Against this backdrop we consider Plaintiff's allegations. Non-Labor Defendants

summarize the claims stated by Stouffer which they argue support dismissal of the ADEA claims

because, as stated, Stouffer has not sufficiently alleged that his receipt of demerits, his

termination, and the alleged scheme to force employees into signing last chance agreements

arose base upon his age:

-  Stouffer is part of a group of "Senior Employees," whose elimination could "reduce expenses" because years of service equate to higher pension costs. 2nd A.C. ¶ 6.

- Benefits are "***based on an employee's years of service*** and earnings." 2nd A.C. ¶ 52.

- Benefits increases and vesting events occur "after 5 years of railroad ***service***" and "after completion of 10 and 30 years of ***service***." 2nd A.C. ¶ 54.a (emphasis added).

- Employees had benefits "accrual rates ***based on years of service to the company***." 2nd A.C. ¶ 61 (emphasis added).

- Defendants "identified ways to reduce these liabilities by preventing Senior Employees ***from reaching accrual milestones*** which, if reached, would provide them with increased post-employment benefits." 2nd A.C. ¶ 62 (emphasis added).

- Stouffer, when he was in his thirties age-wise, was asked to sign a last chance agreement "***to ensure that he would never reach certain accrual milestones for post- employment benefits***." 2nd A.C. ¶ 88 (emphasis added).

 (ECF No. 73 at 16) (emphasis added by Non-Labor Defendants).

 The factual allegations alleged lack sufficient specificity that age was a factor as to the

disparate treatment claim and the disparate impact claim and do not plausibly support a

conclusion that Defendants' decision was motivated by age. As discussed above, cost-cutting as

a motivation alone does not violate the ADEA. *See Hazen*, 507 U.S. at 611. The Supreme Court

has stated "[e]ven if the motivating factor is correlated with age," the evils the ADEA seeks to

12

combat—"the problem of inaccurate and stigmatizing stereotypes"—are not present "[w]hen the employer's decision is wholly motivated by factors other than age." *Hazen*, 507 U.S. at 610–11. To state a valid ADEA claim, Stouffer must allege some facts showing that his age was a determining factor in Defendant's decision to terminate him. *Broaddus*, 145 F.3d at 1287. He does not, however, provide any factual basis for his assertion that his age was a motivating factor in Defendant's decision, separate from any correlation his age may have with his benefits and cost-cutting goals derived therefrom. He alleges that the Railroad insisted he sign a last chance agreement to ensure he would not meet accrual milestones for post-employment benefits, and avers, in a conclusory fashion without any specific facts, that younger employees were not treated in this manner. Stouffer does not allege that any age-based comments were made to him by his managers or other leadership, that he is otherwise aware of age-based written or oral comments, and he concedes that employees under the age of 40 also received demerits, were also subject to last chance agreements, and were also sometimes terminated for rules violations. Plaintiff does not allege any non-conclusory facts to show that his age "actually motivated the employer's decision" to terminate him. *Hazen*, 507 U.S. at 610. Even viewing his assertions in the light most favorable to him, these statements are conclusory and speculative. *Trelenberg v. 21st Century Ins. & Fin. Servs., Inc*., No. 12-3603, 2013 WL 3914468, at *13 (E.D. Pa. July 30, 2013) (dismissing an ADEA claim because the plaintiff "allege[d] no facts that give rise to anything more than pure speculation that she was terminated on account of her age."); *Pina v. Henkel Corp*., No. 07-4048, 2008 WL 819901, at *4 (E.D. Pa. Mar. 26, 2008) (same). Plaintiffs' contentions cannot survive Rule 12(b)(6) scrutiny. Plaintiff has provided no facts to plausibly show that "the circumstances of the adverse employment action give rise to an inference of age discrimination." *Howell v. Millersville Univ. of Pennsylvania*, 283 F. Supp. 3d

309, 325 (E.D. Pa. 2017) (quoting *Mayk v. Reading Eagle Co.,* 2010 WL 1141266, at *5 (E.D.

Pa. Mar. 24, 2010)). Nor has Plaintiff alleged any facts plausibly allowing the Court to draw the

reasonable inference that Defendant's reasons for terminating Plaintiff are "more likely than not

based on the consideration of impermissible factors." *Willis*, 808 F.3d at 644 (quoting *Pivirotto*,

191 F.3d at 352). As Plaintiff failed to allege any non-conclusory facts that raise a reasonable

expectation that discovery will uncover proof that Plaintiff's age motivated Defendant's decision

to terminate Plaintiff, Plaintiff's ADEA claim is dismissed for failure to state a claim.[4]

As for the disparate impact claim, such claims challenge facially neutral employment

practices "that in fact fall more harshly on one group than another." *Hampton v. Borough of

Tinton Falls Police Dep't,* 98 F.3d 107, 112 (3d Cir. 1996) (quoting *Hazen Paper*, 507 U.S. at

609, 113 S.Ct. 1701). Disparate impact claims do not require proof of discriminatory motive like

disparate treatment claims.  *Id*. But the Supreme Court has held that disparate impact liability

under the ADEA "is narrower than under Title VII," in large part because of the ADEA's

reasonable-factor-other-than-age (RFOA) affirmative defense. *Smith v. City of Jackson*, 544 U.S.

228, 240, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005); *see* 29 U.S.C. § 623(f)(1).

"To state a *prima facie* case for disparate impact under the ADEA, a plaintiff must (1)

identify a specific, facially neutral policy, and (2) proffer statistical evidence that the policy

---

[4] To the extent Plaintiff is bringing a hostile work environment claim, which is not specifically set forth in a separate count of the SAC, but is mentioned in passing, said claim fails to allege sufficient factual matter, which accepted as true, state a claim to relief that is plausible on its face.  He alleges he was micromanaged by his supervisor, subject to surreptitious surveillance, denied meal periods, refused headlamp batteries, and forced to work shifts that were not properly staffed. Younger employees were never treated in the same or a substantially similar way during the relevant period of these claims. (SAC ¶ 90). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' Instead, a hostile work environment requires conduct that is 'severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive[.]'" Conduct must be "permeated with discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ...." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

14

caused a significant age-based disparity." *Karlo*, 849 F.3d at 69. "[T]he employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 280 (D. Conn. 2009) (quoting *Smith*, 544 U.S. at 241, 125 S.Ct. 1536). "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Id.* (quoting *Smith*, 544 U.S. at 241, 125 S.Ct. 1536). Once a plaintiff establishes a *prima facie* case, an employer can defend by arguing that the challenged practice was based on reasonable factors other than age. *Karlo*, 849 F.3d at 69 (citing 29 U.S.C. § 423(f)(1); 29 C.F.R. § 1625.7).

Plaintiff argues he has sufficiently alleged the neutral last chance agreements and demerits policies have had a discriminatory and adverse impact on Plaintiff and other Senior Employees over the age of 40. The crux of the claim is that there was a "scheme" to target senior employees, and that the scheme is facially neutral. The SAC, again, is full of labels and conclusions. Plaintiff alleges the actual application and enforcement of the demerits policy and last chance agreements resulted in a statistically significant disparity in the number and/or nature of demerits issued to Plaintiff and other Senior Employees. While Stouffer has identified an alleged practice responsible for disparity, which we find is barely facially neutral, he provides no specific facts to support the existence of a "scheme" which could constitute an alleged policy hiding age-based discrimination. He has not alleged any facts to support that Non-Labor Defendants' allegedly discriminatory policy disparately impacted workers over the age of 40, so as to carry the disparate impact claim over the plausibility threshold. *Knox v. PPG Industries, Inc.*, 2016 WL 279004, *7 (W.D. Pa. Jan. 22, 2016).

15

Accordingly, the motion to dismiss will be granted with respect to both the disparate impact and disparate treatment claims.

### E. Collective Action Allegations

Non-Labor Defendants further argue that Stouffer pleads no facts to support a commonality for purposes of a collective action. They argue he fails to plead facts that give reason to collectively tie together the various demerits and terminations of a group, and thus he fails to state a claim and should be dismissed under Rules 12(b)(6) and/or should be stricken pursuant to Federal Rule of Civil Procedure 12(f).

Even if the motion to dismiss were not granted, and as we previously held when deciding the motion to dismiss the First Amended Complaint, the motion is premature at this stage. *Zavala v. Wal–Mart Stores Inc*., 691 F.3d 527, 537 (3d Cir. 2012) (stating that factors relevant to whether plaintiffs are similarly situated include, but are not limited to "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment").

Accordingly, the motion to dismiss is denied with respect to the collective action portion of the Amended Complaint.

### F. **Marsh**

Non-Labor Defendants argue that Charles Marsh's claims should be dismissed with prejudice, as notice by the Court's show cause order. (ECF No. 59). When the First Amended Complaint (Doc. No. 18) was filed, it was blank as to Charles Marsh. On July 31, 2020, Marsh filed an entirely new lawsuit in this Court, docketed at No. 2:20-cv-01145 ("Marsh II"). The new

16

Marsh II lawsuit concerns the same employment termination and ADEA claim as Marsh's Original Complaint.

Pursuant to Rule 41(b) governing involuntary dismissals, a defendant may move to dismiss an action or any claims against it where the plaintiff either fails to prosecute the case or fails to comply with court rules or orders. Fed. R. Civ. P. 41(b). The Rule expressly provides that a dismissal order pursuant to 41(b) "operates as an adjudication on the merits" unless the order states otherwise. *Id*. "Failure to prosecute does not require that the party take affirmative steps to delay the case. A failure to comply with court orders, failure to respond to discovery or other failure to act is sufficient to constitute lack of prosecution." *Melvin v. Astbury*, No. 05–771, 2006 WL 1084225, at *2 (D.N.J. Apr. 21, 2006) (citing *Adams v. Trs. of the New Jersey Brewery Emps.' Pension Trust Fund*, 29 F.3d 863, 875 (3d Cir.1994); *Nat'l Hockey League v. Metro. Hockey Club,* 427 U.S. 639, 640–641, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). The Third Circuit requires "that a district court must consider [the six factors set forth in *Poulis v. State Farm Fire and Casualty Co.*] before dismissing an action for failure to prosecute." *Clarke v. Nicholson*, 153 Fed. Appx. 69, 72 (3d Cir.2005) (citing *Poulis*, 747 F.2d 863, 868 (3d Cir.1984)).

Here, the requisite factors support dismissal on the grounds of failure to prosecute. In response to the Non-Labor Defendants' motion, Marsh appears to have abandoned his claim. In response to the show cause order Marsh essentially argues that the Amended Complaint should be viewed as a change in "lead plaintiff," and that, in lieu of dismissal, he should now be afforded a new chance to amend. See Doc. No. 63, ¶¶ 6, 16. Further, in the brief in opposition to the motion to dismiss, Stouffer's counsel states:

> In their Motion, Defendants raise an issue concerning Charles Marsh. Counsel does not represent Marsh and simply asks this Court to deny Defendants' request to dismiss Marsh's claims pursuant to their Motion and to instead rule on the filings

17

submitted by the parties in response to this Court's Order to Show Cause (Doc. Nos. 59, 63, 64, and 67).

 (ECF No. 79 at 21, n. 5).  Thus, Marsh himself does not appear to be personally responsible for any failure to prosecute, and there does not appear to be any willful misconduct.  It is clear he would not be prejudiced by a dismissal. Based on this record, and the fact that Marsh has filed a subsequent lawsuit alleging nearly identical claims as are set forth in this action, the motion to dismiss is granted as to Charles Marsh and he is dismissed with prejudice for failure to prosecute.

## IV. Conclusion

For the reasons discussed above, the Court will grant the motion to dismiss the SAC on the grounds of failure to state a claim.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 14, 2022

cc/ecf: All counsel of record

18