UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

## CASE NO. 22-1680

SCOTT STOUFFER,

*Appellant,*

v.

UNION RAILROAD CO., *et al.*,

*Appellees*

**Appeal from the March 14, 2022 Order and Judgment of the United States District Court for the Western District of Pennsylvania (Honorable U.S. District Judge Robert J. Colville), at Civil Action No. 2:20-cv-00133-RJC, Dismissing Plaintiff-Appellant's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6)**

**BRIEF OF APPELLEES
UNION RAILROAD COMPANY, LLC, TRANSTAR, LLC,
AND UNITED STATES STEEL CORPORATION**

Mary-Jo Rebelo, Esq.
Thomas M. Pohl, Esq.
Courtney C. Brennan, Esq.
BURNS WHITE LLC
48 26th Street
Pittsburgh, PA 15222
Tel.:      (412) 995-3000
Fax:      (412) 995-3300
Email:    mjrebelo@burnswhite.com
          tmpohl@burnswhite.com
          ccbrennan@burnswhite.com
*Counsel for Appellees*

# TABLE OF CONTENTS

<u>**PAGE**</u>

**TABLE OF AUTHORITIES** ........................................................................ iv

**COUNTERSTATEMENT OF THE ISSUES** .................................................. 1

**STATEMENT OF RELATED CASES AND PROCEEDINGS** ................... 2

**COUNTERSTATEMENT OF THE CASE** ....................................................... 3

    **A.**    **Subject Matter of the Case** ........................................................... 3

    **B.**    **Parties** .............................................................................................. 3

        1.    Original Plaintiff (and Non-Appellant) Charles Marsh ........ 3

        2.    Current Plaintiff-Appellant Scott Stouffer ........................... 4

        3.    The Defendants-Appellees (URR, Transtar, and USS) ........ 5

        4.    Former Defendant Smart Transportation Division .............. 5

    **C.**    **Allegations** ...................................................................................... 6

        1.    Summary of Charles Marsh's Allegations ........................... 6

        2.    Summary of Plaintiff-Appellant Scott Stouffer's
            Allegations ............................................................................ 6

    **D.**    **Procedural History** ......................................................................... 9

        1.    After Two Amendments, This Case Was Dismissed ........... 9

        2.    The Court's R. 12(b)(6) Dismissal ...................................... 9

    **E.**    **Subject Matter Jurisdiction of the Federal Courts** .................. 11

**SUMMARY OF THE ARGUMENT** ............................................................ 13

# TABLE OF CONTENTS
## (continued)

**PAGE**

**ARGUMENT** ................................................................ 15

    **A.**    **Introduction** ................................................ 15

    **B.**    **Standard of Review** ..................................... 16

          1.    Appellate Review of a Motion to Dismiss ......... 16

          2.    Rule 12(b)(6) Standard ..................................... 16

          3.    ADEA Disparate Impact Claims ....................... 17

    **C.**    **This Court should affirm the District Court's decision to dismiss Plaintiff-Appellant's Second Amended Complaint, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state an Age Discrimination in Employment Act (ADEA) claim.** ............... 18

          1.    The District Court correctly relied upon the U.S. Supreme Court's *Hazen Paper* case to dismiss the case, as the affirmative allegations in Plaintiff-Appellant's Second Amended Complaint were, on their face, directed toward individuals' time-in-service for benefits as opposed to their age. ...................................... 18

          2.    The District Court correctly applied *Twombly* and *Iqbal* and did not, as Plaintiff-Appellant frames it, "misappl[y] the standard set forth under Rule 12 of the Federal Rules of Civil Procedure." ........................................... 22

    **D.**    **The District Court's decision to dismiss with prejudice as opposed to permitting a Third Amended Complaint was not an abuse of discretion.** ....................................... 25

**CONCLUSION** ............................................................. 26

**TABLE OF CONTENTS**
**(continued)**

**PAGE**

**CERTIFICATE OF COMPLIANCE** ............................................................. 27

**CERTIFICATE OF SERVICE** ...................................................................... 28

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ......................................................*passim*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................*passim*

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) ...................... 16

*Bush v. Adams*, 473 F. App'x 147 (3d Cir. 2012). ........................................... 16

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). ............................ 16

*Glover v. F.D.I.C.*, 698 F.3d 139 (3d Cir. 2012). ............................................... 3

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)...................................*passim*

*In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961
(N.D. Iowa 2011). ........................................................................................ 23

*In re Railway Industry Employee No-Poach Antitrust Litigation*,
395 F. Supp. 3d 464 (W.D. Pa. 2019).................................................. 22, 23

*Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61 (3d Cir. 2017)........... 17, 23

*Knox v. PPG Industries, Inc.*, 2016 WL 279004 (W.D. Pa. Jan. 22, 2016). ..... 11

*Lake v. Arnold*, 232 F.3d 360 (3d Cir. 2000)................................................... 25

*Malobabich v. Norfolk Southern Corp.*, No. 2:11-cv-112,
2011 WL 1791306 (W.D. Pa. May 10, 2011). ............................................ 11

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010).. ......................... 16

*Smith v. City of Jackson, Mississippi*, 544 U.S. 228 (2005). ...................... 17, 24

*Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274 (D. Conn. 2009). ............. 17, 24

## TABLE OF AUTHORITIES
### (continued)

**PAGE**

**Statutes**

29 U.S.C. § 216(b) ........................................................................... 3,4,9

29 U.S.C. §§ 621, *et seq.* ("ADEA") .......................................................*passim*

45 U.S.C. § 151, *et seq.* ("RLA") ............................................................. 11, 12


**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................*passim*

Fed. R. Civ. P. 15(c)............................................................................ 4

## <u>COUNTERSTATEMENT OF THE ISSUES</u>

1.    Whether the District Court erred when it dismissed Plaintiff-Appellant's Second Amended Complaint, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state an Age Discrimination in Employment Act (ADEA) claim where the *affirmative* allegations in Plaintiff-Appellant's complaint were, on their face, directed toward individuals' time-in-service for benefits as opposed to their age?

<u>Suggested answer</u>:  No.  The District Court did not err.

2.    Whether the District Court, as Plaintiff-Appellant frames it, "misappl[ied] the standard set forth under Rule 12 of the Federal Rules of Civil Procedure."

<u>Suggested answer</u>:  No.  The District Court did not err.

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

1.    This case has not previously been before this Court.

2.    Appellees are not aware of any related proceedings that have previously been before this Court.

3.    The following cases have been filed in, and are currently pending in, the United States District Court for the Western District of Pennsylvania and might possibly be considered to be related cases and proceedings by this Court:

(i)    *Marsh v. Union Railroad Company, LLC, et al.*,
No. 2:20-cv-01145-RJC

(ii)    *Scott v. Union Railroad Company, LLC, et al.*,
No. 2:20-cv-00254-WSH

(ii)    *Scott v. United States Steel Corporation, et al.*,
No. 2:20-cv-01767-WSH

(iv)    *Prolenski, et al. v. United States Steel Corporation, et al.*,
No. 2:21-cv-00545-WSH

(v)    *McCrumb v. Union Railroad Company, LLC, et al.*,
No. 2:21-cv-00718-RJC

(vi)    *Markovich v. Transtar, LLC, et al.*,
No. 2:21-cv-01596-MJH-PLD

## COUNTERSTATEMENT OF THE CASE

**A.**   **Subject Matter of the Case**

This is an action alleging violation of the **Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA")**.   Plaintiff-Appellant Scott Stouffer ("Stouffer" or "Appellant"), within the operative Second Amended Complaint, purports to bring his case individually and also as a putative collective action, pursuant to 29 U.S.C. § 216(b).   (A.37; A.55 ¶108).   Stouffer purports to represent himself and other over-age-40 Union Railroad Company, LLC employees who were, as he alleges, "targeted" for "cost-cutting measures" by the defendant-appellee railroad so that Stouffer and others would not reach time-in-service benchmarks for various pension benefits.[1]   (A.55 ¶108; A.48 ¶62).

**B.**   **Parties**

**1.**   **Original Plaintiff (and Non-Appellant) Charles Marsh**

On January 29, 2020, this ADEA case was initiated by a single individual, Charles Marsh ("Marsh").   (A.23 (Doc. 1)).   Marsh is a former URR employee who was terminated in 2019 for accumulating more than 100 demerits, a demerits-level within URR which presumptively triggers automatic termination.   In an odd

---

[1] Facts alleged in Plaintiff-Appellant's Second Amended Complaint, including those recited herein, are assumed true only for purposes of this appeal of the District Court's granting of Appellees' Motion to Dismiss. *Glover v. F.D.I.C.*, 698 F.3d 139, 142 n.1 (3d Cir. 2012).

procedural move (to which Appellees objected below), Marsh obtained leave to file a first amended complaint and then, through common plaintiffs' counsel at the time of filing, Marsh entirely disappeared from mention in the pleadings in this case (A.20–A.22) and another terminated URR employee, Plaintiff-Appellant Scott Stouffer, appeared and asserted claims for the first time via "Charles Marsh's" first amended complaint.[2]  (A.5).

### 2.    Current Plaintiff-Appellant Scott Stouffer

Stouffer, the current Appellant,[3] entered into this already-pending case via the case's first amended complaint during the District Court proceedings (A.5), and now—following the dismissal by that court of the <u>Second</u> Amended Complaint for continued inability to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure—Stouffer (but not Marsh) continues to prosecute this action as the Appellant in this appeal.  (A.35–A.36).

As noted, the case was brought in District Court as a putative collective action, pursuant to 29 U.S.C. § 216(b).   In that regard, Stouffer purports to

---

[2]  Appellees objected, in the District Court, to Stouffer's effectively filing a new complaint under Marsh's docket number.  Stouffer's complaint does not relate back under FED. R. CIV. P. 15(c) to Marsh's Original Complaint.  (A.32 (Doc. 59)).

[3]  Original Plaintiff Charles Marsh has *not* appealed from the District Court. (A.35–A.36).

represent himself and certain other over-age-40 Union Railroad Company, LLC employees.  (A.55 ¶108).

### 3.     The Defendants-Appellees (URR, Transtar, and USS)

The Defendants-Appellees—described in some District Court materials, for convenience of referral, as the "Non-Labor Defendants"—are separate, individual companies.  Union Railroad Company, LLC ("URR") is a company that provides railroad services for United States Steel Corporation ("USS"), including moving raw materials, steel, and finished product.  (A.6).  Transtar, LLC ("Transtar") is a company that owns URR and other rail carriers that service USS and, when the lawsuit was filed, was a wholly-owned subsidiary of USS.  (A.6).  USS is a publicly-traded company that is involved in the manufacture and sale of steel products and related businesses.  USS owned Transtar (and thus, indirectly, URR) during the course of Marsh's and Stouffer's employment periods (A.6), but USS no longer owns Transtar or URR.  (A.35 (Docs. 88, 89)).  Marsh and Stouffer were employees of URR, but were never—at any point in time—employees of Transtar or USS.  (A52–A53 ¶¶83, 93).

### 4.     Former Defendant Smart Transportation Division

Smart Transportation Division ("Smart") is a division of the labor union that represented URR employees pursuant to a CBA.  (A.65–A.66).  While the original and first amended complaints in this case included claims naming Smart as a

defendant, the operative Second Amended Complaint that is currently before this Court on appeal does not include claims against Smart.[4]  (A.37–A.59).

## C.    **Allegations**

### 1.    **Summary of Charles Marsh's Allegations**

Marsh's Original Complaint was mooted by the First Amended Complaint, which contains no allegations at all as to Marsh.  The same is true for the Second Amended Complaint.  (A.20–A.22).  He has abandoned his claims, and has not appealed.  (A.35–A.36).

### 2.    **Summary of Plaintiff-Appellant Scott Stouffer's Allegations**

The current named Plaintiff-Appellant, Scott Stouffer, was not named in the Original Complaint and, instead, surfaced in the April 17, 2020 First Amended Complaint.  (A.5).  Stouffer pleads that he "was hired by Union Railroad as a Brakeman."  (A.52 ¶83).  He alleges that, while he was still in his thirties age-wise (and thus not yet within the age-range for an ADEA claim), he was disciplined for insubordination and, while in his thirties age-wise and while represented by Smart, chose to sign a "last chance agreement" with URR.  (A.52 ¶¶85-87).  He was later terminated for serious and potentially catastrophic cardinal rules violations when—

---

[4]    Smart was represented by separate counsel, different than the counsel collectively representing URR, Transtar, and USS.  (A.26).

while serving as the brakeman for a train—he allowed his train to run through a switch.  (A.53 ¶91).

Stouffer previously explained that URR had a disciplinary policy under which employees could be assessed demerits for rule violations, with employees reaching 100 demerits being subject to termination.  (A.63–A.65).  URR also used "last chance agreements" as a part of this disciplinary system.  (A.63–A.65). These agreements with URR were lobbied and bargained for by the union because they permit disciplined employees who might otherwise exceed URR's 100-demerit termination threshold to get an extra chance at retaining their jobs at URR by waiving formal disciplinary proceedings in exchange for continued employment during a probationary period.  (A.63–A.65).  Stouffer's Second Amended Complaint carries over and includes allegations concerning URR's demerits policy and last chance agreements (A.50 ¶73), although it reduces the amount of detail included about these items, presumably because (i) issues of URR employee discipline and demerits fall within the jurisdiction of NRAB arbitration and (ii) the demerits policy is a URR policy, and not a Transtar or USS policy.[5]

Stouffer admits to committing insubordination (calling his supervisor a "jagoff").  (A.52 ¶85).  Pursuant to a collective bargaining agreement ("CBA") and

---

[5]  In fact, other railroads owned by Transtar (A.38 ¶10) have different demerits policies that materially differ from URR's demerits policy.

its import, Stouffer was offered a formal investigation. But, instead, he and the union negotiated a March 24, 2017 agreement with Stouffer's employer, URR—a last chance agreement—in which Stouffer entered into a "full and final settlement of the [insubordination] matter" that included that Stouffer's "guilt . . . shall be affirmed and he shall be assessed sixty (60) demerits" and that placed Stouffer on temporary probation, such that future violations would, by agreement, "result in [Stouffer's] immediate dismissal . . . in accordance with the CBA."  (A.67). Stouffer pleads that he was subject to this agreement (A.52 ¶86); that he signed this agreement while represented (A.52 ¶¶86-87); and that he signed this agreement when he was in his thirties, age-wise.  (A.52 ¶¶82, 85, 87).

On December 2, 2018, Stouffer committed potentially catastrophic cardinal rules violations while serving as the brakeman for a train when he: allowed his train to run through a misaligned track switch; permitted his train to continue down a path that was not set for his train's movement; and caused his train to remain sitting on a track that was actually lined for conflicting train movement.  He was "charged with multiple cardinal rule violations and immediately terminated." (A.53 ¶91).  Stouffer was 41 years and 6 months old at the time.  (A.52 ¶82).

Stouffer pleads two counts against the Non-Labor Defendants: ADEA disparate treatment (A.56–A.57 ¶¶111-116); and ADEA disparate impact (A.57 ¶¶117-123).  These counts are based upon the same underlying allegations and

events.  For both theories, Stouffer speculates that his termination for demerits, his admitted insubordination, and his potentially-catastrophic safety violations were all part of a scheme to terminate URR employees who were "40 years or older at the time of their firing."  (A.38 ¶6).  Stouffer also seeks to proceed as an ADEA collective action pursuant to 29 U.S.C. § 616(b).  (A.55–A.56 ¶¶108-110).

### D.    Procedural History

#### 1.    After Two Amendments, This Case Was Dismissed

On January 29, 2020, this case was initiated by Charles Marsh.  (A.26 (Doc. 1)).  An April 17, 2020 First Amended Complaint added Scott Stouffer as a named plaintiff.  (A.28 (Docs. 18, 19)).  Upon motions to dismiss by all Defendants, the Court issued a March 30, 2021 Memorandum Opinion (A.32 (Doc. 57)) and related orders, and granted leave to file a Second Amended Complaint, which was filed on April 30, 2021.  (A.33 (Doc. 69)).  Additionally, in response to Marsh's abandonment of his claims, the Court issued a show-cause order to address his status.  (A.32 (Doc. 59)).

#### 2.    The Court's R. 12(b)(6) Dismissal

On March 14, 2022, the District Court entered an Order (A.2–A.3) that, *inter alia*, dismissed Stouffer's Second Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), holding that Stouffer's Second Amended Complaint "fail[ed] to state a claim under the ADEA."  (A.3).  The Order stated:  "This case is

hereby DISMISSED in its entirety with prejudice. The Clerk of Court shall mark this case as CLOSED." (A.3).

As to Charles Marsh, the District Court held and explained: "[T]he motion to dismiss is granted as to Charles Marsh and he is dismissed with prejudice for failure to prosecute." (A.22; *see also* A.2).

Turning back to Defendant-Appellant Stouffer: In the District Court's March 14, 2022 Memorandum Opinion (A.5–A.22), the Court explained, *inter alia*, that:

> **When an employer's action is based upon years of service, it does not involve the inaccurate and stigmatizing age-based stereotypes the ADEA intended to address.** *Hazen Paper*, 507 U.S. at 611, 113 S.Ct. 1701. **For that reason, termination based solely on financial consideration related to years of service is not actionable under the ADEA.** *See id.* at 612-13, 113 S.Ct. 1701.

(A.15) (emphasis added) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)).

The District Court also assessed and held, *inter alia*, that even if Stouffer had not affirmatively based his pleadings upon specific time-in-service allegations in lieu of actual age-related allegations, Stouffer's claims would still fail to meet Rule 12(b)(6) pleadings standards because the Second Amended Complaint was tied to an underlying "scheme" pled that was supported by nothing more than conclusory allegations in lieu of well-pleaded facts. The District Court held:

**The [Second Amended Complaint], again, is full of labels and conclusions. . . . [Stouffer] has not alleged any facts to support that [the Appellees'] allegedly discriminatory policy disparately impacted workers over the age of 40, so as to carry the disparate impact claim over the plausibility threshold.** *Knox v. PPG Industries, Inc.*, 2016 WL 279004, *7 (W.D. Pa. Jan. 22, 2016).

(A.19) (emphasis added).

E.      <u>**Subject Matter Jurisdiction of the Federal Courts**</u>

Pursuant to a URR collective bargaining agreement and its import, URR employees, including both original plaintiff Charles Marsh and current Appellant Stouffer, are required by Congress to present their claims involving railroad-industry demerits and termination for arbitration before the National Railroad Adjustment Board ("NRAB"), which is the exclusive forum for such employee demerit and disciplinary claims pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA").  Appellees objected in District Court (A.12), and continue to maintain, that federal court jurisdiction over this case is precluded under the RLA because this is—at its core—a railroad employee disciplinary matter that falls under the RLA and is thus subject to the congressional carve-out mandating NRAB arbitration in lieu of federal court litigation.  As noted and briefed in the District Court, this is particularly so in light of the fact that reliance upon collectively-bargained-for agreements and documents germane to employee demerits and disciple are implicated in both the allegations and in the anticipated defenses. *See Malobabich v. Norfolk Southern Corp.*, No. 2:11-cv-112, 2011 WL

1791306, at *1 (W.D. Pa. May 10, 2011).

Because federal court subject matter jurisdiction cannot be waived, and because the District Court found for the Appellees on other grounds, no cross appeal has been filed by the Appellees as to the RLA preclusion issue. It is noted here for purposes of informing the Court, on appeal, of the various issues contested in the proceedings below.[6]

---

[6] Should any portion of this case return to the District Court for additional proceedings, Appellees intend to continue to maintain that the federal courts lack subject matter jurisdiction over this case pursuant to the RLA.

# SUMMARY OF THE ARGUMENT

The District Court's dismissal of this case, with prejudice, should be affirmed. This is particularly so because the District Court afforded two opportunities to cure deficiencies in the pleadings, and yet the Second Amended Complaint still could not survive Rule 12(b)(6) dismissal.

The District Court's first and primary basis for dismissal is dispositive by itself. The United States Supreme Court's decision in *Hazen Paper* is controlling. That case held that allegations based upon time-in-service, as opposed to actual age of the individual(s), do not state an ADEA claim. The District Court's Memorandum Opinion, on this topic, lays out a detailed, bullet-pointed list from the Second Amended Complaint, with paragraph-by-paragraph citations, that makes clear that Stouffer affirmatively pled a complaint in which the scant factual allegations were all expressly based upon "years of service to the company," as opposed to age. (A.16; *see also* A14–A.15).

While the foregoing is dispositive of this case under *Hazen Paper*, the District Court also, as a secondary approach, considered whether the Second Amended Complaint actually contained any factual allegations of age-based discrimination, or whether it merely contained conclusions. The District Court determined that the Second Amended Complaint rested upon the latter. It simply

does not meet the requirements of *Twombly* and *Iqbal*,[7] (A.10–A.11), and particularly not to the extent that it attempts to claim, via broad conclusions, the existence of some sort of vague "scheme."  (A.13–A.14; A.19).

The District Court's granting of Appellees' Motion to Dismiss should be affirmed.

---

[7] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

# ARGUMENT

## A.    Introduction

As outlined in the Summary of Argument in the immediately preceding section of this Brief, *supra*, the District Court's granting of Appellees' Motion to Dismiss should be affirmed.    The District Court's first and primary basis for dismissal is dispositive.    That is, the District Court correctly observed that Stouffer's own affirmative allegations within the Second Amended Complaint are expressly based upon time-in-service, and not age.    In fact, Stouffer's examples of alleged ADEA age discrimination include disciplinary actions taken against Stouffer when he himself was admittedly still in his thirties, age-wise.    The District Court thus correctly noted that this case is controlled by the United States Supreme Court's decision in *Hazen Paper*.    (A.14–A.18).

Separately, the District Court—again, correctly—also held that even if the prior item were not dispositive, Stouffer's Second Amended Complaint additionally suffers from a fatal weakness in that—even after two opportunities to amend—all allegations of age discrimination still rest upon mere conclusory allegations in lieu of any actual, well-pleaded facts.    The basic pleading requirements of *Twombly* and *Iqbal* are not met.    (A.10–A.11; A.18–A.20).

In sum, the District Court's decision should be upheld.

**B.  Standard of Review**

    **1.  Appellate Review of a Motion to Dismiss**

A federal appellate court reviews a district court's decision granting a party's motion to dismiss *de novo*. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *Bush v. Adams*, 473 F. App'x 147, 147-48 (3d Cir. 2012).

    **2.  Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  In order for a complaint to state a valid cause of action, it must be "plausible on its face." *Santiago v. Warminster Twp.,* 629 F.3d 121, 128 (3d Cir. 2010).  Under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While "[t]he District Court must accept the complaint's well-pleaded facts as true," it "may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 663).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  That is, the complaint must include sufficient "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Allegations that are "no more than conclusions" are "not entitled to the assumption of truth." *Id.; see also id.* ("naked assertions devoid of further factual enhancement" should be disregarded). The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully" and requires that the complaint be more than "merely consistent with a defendant's liability." *Id*.

### 3.    <u>ADEA Disparate Impact Claims</u>

"To state a *prima facie* case for disparate impact under the ADEA, a plaintiff must (1) identify a specific, facially neutral policy, and (2) proffer statistical evidence that the policy caused a significant aged-based disparity." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017). "[T]he employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 280 (D. Conn. 2009) (quoting *Smith v. City of Jackson, Mississippi*, 544 U.S. 228, 241 (2005)). "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Zawacki*, 628 F. Supp. 2d at 280 (quoting *Smith*, 544 U.S. at 241).

**C.** **This Court should affirm the District Court's decision to dismiss Plaintiff-Appellant's Second Amended Complaint, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state an Age Discrimination in Employment Act (ADEA) claim.**

1. The District Court correctly relied upon the U.S. Supreme Court's *Hazen Paper* case to dismiss the case, as the affirmative allegations in Plaintiff-Appellant's Second Amended Complaint were, on their face, directed toward individuals' time-in-service for benefits as opposed to their age.

The District Court's first and primary basis for dismissal is dispositive. The Court correctly observed that Stouffer's own affirmative allegations within the Second Amended Complaint are expressly based upon time-in-service, and not age. In fact, Stouffer's examples of alleged ADEA age discrimination include disciplinary actions taken against Stouffer when he himself was admittedly still in his thirties, age-wise. The District Court thus correctly noted that this case is controlled by the United States Supreme Court's decision in *Hazen Paper*.

In *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), the Supreme Court addressed a scenario where "[the] evidence, as construed most favorably to [plaintiff], showed that the Hazen Paper pension plan had a 10-year vesting period and that [plaintiff] would have reached the 10-year mark had he worked 'a few more weeks' after being fired." *Id.* at 607. Addressing this, the Court also noted that "an employee's pension status or seniority . . . is empirically correlated with age." *Id.* at 608. The Court then squarely held:

Pension plans typically provide that an employee's accrued benefits will become nonforfeitable, or "vested," once the employee completes a certain number of years of service with the employer. On average, an older employee has had more years in the work force than a younger employee, and this may well have accumulated more years of service with a particular employer. . . . Perhaps it is true that older employees of Hazen Paper are more likely to be "close to vesting" than younger employees. Yet **a decision by the company to fire an older employee solely because he has nine-plus years of service and therefore is "close to vesting" would not constitute discriminatory treatment on the basis of age**. . . . The decision would not be the result of an inaccurate and denigrating generalization about age, but would rather represent an *accurate* judgment about the employee—that he indeed is "close to vesting." We do not mean to suggest that an employer lawfully could fire an employee in order to prevent his pension benefits from vesting. . . . **But it would not, without more, violate the ADEA.**

*Id.* at 611-12 (italics in original; bold underlining added). The Supreme Court concluded: "[A]n employer does not violate the ADEA just by interfering with an older employee's pension benefits that would have vested by virtue of the employee's years of service." *Id.* at 613.

Courts are to look to the substance of the pleadings when evaluating them in response to a Rule 12(b)(6) motion. Here, Stouffer attempted in his Second Amended Complaint—albeit via unsupported and conclusory statements—to describe a nefarious scheme on Defendants' part to engage in cost-cutting by targeting "Senior Employees" due to their pension status. (A.38 ¶6; A.52 ¶88). But, looking beyond Stouffer's labels to examine the substance of the allegations, it is clear that he was really claiming that persons were supposedly targeted—not

because of their age—but instead due to their pension statuses. In fact, Stouffer himself complains about being targeted with a last chance agreement when he was still in his thirties—below the ADEA age threshold.

Here, among the items pled by Stouffer:

- Stouffer is part of a group of "Senior Employees," whose elimination could "reduce expenses" because years of service equate to higher pension costs. (A.38 ¶6).

- Benefits are "***based on an employee's years of service*** and earnings." (A.46 ¶52).

- Benefits increases and vesting events occur "after 5 years of railroad ***service***" and "after completion of 10 and 30 years of ***service***." (A.46 ¶54.a) (emphasis added).

- Employees had benefits "accrual rates ***based on years of service to the company***." (A.48 ¶61) (emphasis added).

- Defendants "identified ways to reduce these liabilities by preventing Senior Employees ***from reaching accrual milestones*** which, if reached, would provide them with increased post-employment benefits." (A.48 ¶62) (emphasis added).

- Stouffer, when he was in his thirties age-wise, was asked to sign a last chance agreement "***to ensure that he would never reach certain accrual***

*milestones for post-employment benefits*."    (A.52 ¶88) (emphasis added).

While Stouffer purports to bring this action as an ADEA case, it is clear from bullet points above that *age* is not the motivating factor here, nor is it really age that is being complained of.  What Stouffer, instead, attempts to allege is that senior employees were targeted based on their seniority and benefits and pension statuses.  Such allegations may, at times, support other types of claims, but the United States Supreme Court has squarely addressed this scenario and has held that pension or benefits-based seniority claims are *not* ADEA claims, even though there is often a logical correlation that older employees tend to have more seniority.

The District Court agreed, and based its decision to dismiss the case on a plain reading of Stouffer's affirmative allegations.  (Indeed, the bullet pointed list above—which was presented in Appellees' District Court motion to dismiss the Second Amended Complaint—was essentially adopted and pasted into the resulting Memorandum Opinion issued by the District Court.  (*See* A.16).

Here—as the District Court agreed and held—looking at the substance of Stouffer's allegations as bullet-pointed above, it is clear that this case is strongly aligned with *Hazen Paper*.  Moreover, as also noted above, some of the conduct that Stouffer alleges occurred <u>when he was still in his thirties</u>—*i.e.*, prior to his falling within the ADEA's 40-and-over purview.    As the Supreme Court

acknowledged in *Hazen Paper*, there may be other types of claims that a would-be plaintiff could attempt.  But—where the conduct is affirmatively pled to have been motivated by a plan to reduce pension and benefits liabilities—the allegations are *not* age-based and the ADEA is thus simply not applicable.

Accordingly, the District Court correctly held that Stouffer cannot maintain his ADEA claims in this case.  The District Court's order and opinion should be affirmed.

2.    The District Court correctly applied *Twombly* and *Iqbal* and did not, as Plaintiff-Appellant frames it, "misappl[y] the standard set forth under Rule 12 of the Federal Rules of Civil Procedure."

The District Court's disposition of this case for the reasons discussed within the immediately preceding section of this brief, *supra*, should end the inquiry. However, Stouffer, on appeal, additionally argues that his Second Amended Complaint independently makes out a claim for ADEA disparate impact.  The District Court disagreed with Stouffer and, here again, the order and opinion of the District Court should be upheld.  (A.10–A.11; A.13–A.20).

To survive a Rule 12(b)(6) motion, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  It is not enough to merely make sweeping statements that a nefarious plot is believed to exist.  As this Court explained in *In re Railway Industry Employee No-Poach Antitrust Litigation*, 395 F. Supp. 3d 464, 492 (W.D.

Pa. 2019), in the context of alleged agreements or schemes:

> Here, . . . [the complaint] skips straight to conclusory allegations of an agreement among defendants. . . . [A] naked assertion of conspiracy in a . . . complaint . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility.

*Id.* (quoting *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 974 (N.D. Iowa 2011); *Bell Atl. Corp. v. Twombly*, 550 U.S. at 557). Courts, instead, press would-be plaintiffs to plead statements made by managers, or knowledge of other communications, or other factual detail that could bring the pleadings beyond the realm of conclusory speculation.

> "[T]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient *in conjunction with a more specific allegation—for example, identifying a written agreement* . . . but . . . [P]laintiffs' allegation that . . . the defendants . . . reached agreements . . . are merely conclusory allegations of an agreement, *not allegations of facts* from which an agreement can reasonably be inferred. Similarly, allegations that the defendants concealed their agreement . . . are merely conclusory allegations *providing no factual enhancement.*

*In re Railway Industry Employee No-Poach Antitrust Litigation*, 395 F. Supp. 3d at 492 (internal citations omitted) (emphasis added).

"To state a *prima facie* case for disparate impact under the ADEA, a plaintiff must (1) identify a specific, facially neutral policy, and (2) proffer statistical evidence that the policy caused a significant aged-based disparity." *Karlo*, 849 F.3d at 69. Moreover, "it is not enough to simply allege that there is a disparate

impact on workers, or point to a generalized policy that leads to such an impact." *Zawacki*, 628 F. Supp. 2d at 280 (quoting *Smith*, 544 U.S. at 241).

As the District Court correctly observed, Stouffer's Second Amended Complaint contains no facts pled that are specific to Stouffer's own experiences as they relate to age discrimination. Despite having amended the pleading, Stouffer does not, at any point, plead <u>facts that support ADEA allegations that he was discriminated against on the basis of age</u>. There are, for example, no statements alleged to have been made by URR or its agents, or other factual allegations supporting that Stouffer was the target of age-based discrimination.

Along this line—and importantly, for disparate impact consideration— Stouffer also does not allege that he would have been treated more favorably (*e.g.*, would have avoided discharge) had he committed rule violations and breached the last chance agreement when he was under age 40. There are no allegations that URR employees under the age of 40 are not subject to demerits or last-chance agreements, or that Stouffer would not have received demerits or termination for permitting a train to sit facing oncoming traffic if he had been younger, or that Stouffer's existing last chance agreement would not have caused termination in such a situation if he had still been 39 at the time of the incident. Indeed, as already noted, Stouffer affirmatively admits within the pleading that he received 60 demerits and he was placed under his last chance agreement <u>when he himself was</u>

still in his thirties, and thus below the ADEA age-40 threshold.  (A.52 ¶¶82-86).

Stouffer's entire pleading contains only mere conclusory allegations providing no factual enhancement, coupled with a wildly-shifting narrative whose contradictions and inconsistencies render it not plausible.  Stouffer's pleading also lacks specific allegations supporting age-related, discriminatory actions against Stouffer.  For these reasons, the District Court correctly held that—even if *Hazen Paper* were not a bar here—all ADEA claims still require dismissal because, as pled, they are conclusory and not plausible.  *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 663.

Here again, District Court's order and opinion should be affirmed.

## D.    The District Court's decision to dismiss with prejudice as opposed to permitting a Third Amended Complaint was not an abuse of discretion.

An appellate court reviews a district court's denial of a request to amend for an abuse of discretion.  *Lake v. Arnold*, 232 F.3d 360, 373-74 (3d Cir. 2000). Here, however—as the District Court noted within its Memorandum Opinion— Stouffer did not seek leave to file a third amended complaint.  (A.14 at n.3). Nevertheless, the District Court prudently addressed the issue of potential amendment *sua sponte* and correctly declined to allow a third amended complaint in this case.  (A.14 at n.3).  Under the law of the Third Circuit, denying leave to amend after two amendments is common and certainly not an abuse of discretion. *See Lake*, 232 F.3d at 373-74.

Accordingly, to the extent that Stouffer seeks the remedy of attempting to amend, such avenue should not be permitted. The District Court did not abuse its discretion.

## **CONCLUSION**

For the foregoing reasons, the District Court's order granting Appellees' Motion to Dismiss with prejudice should be affirmed.

Dated:  September 7, 2022

Respectfully submitted,

BURNS WHITE LLC

By:    /s/ Thomas M. Pohl, Esq.
Thomas M. Pohl, Esq.
Pa. I.D. No. 208080
Mary-Jo Rebelo, Esq.
Pa. I.D. No. 53539
Courtney C. Brennan, Esq.
Pa. I.D. No. 327337
BURNS WHITE LLC
48 26th Street
Pittsburgh, PA 15222
Tel.:      (412) 995-3000
Fax:      (412) 995-3300
Email:    tmpohl@burnswhite.com
          mjrebelo@burnswhite.com
          ccbrennan@burnswhite.com
*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

1.    The undersigned, Thomas M. Pohl, Esq., and Mary-Jo Rebelo, Esq. and Courtney C. Brennan, Esq., are all licensed to practice law in the Commonwealth of Pennsylvania and the Third Circuit Court of Appeals, and are all in good standing.

2.    This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 5,253 words and 505 lines, excluding the parts exempted from length count under Fed. R. App. P. 32.

3.    This Brief complies with the typeface requirements of Circuit Rule 32(a)(1) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word, Microsoft Office 2016, in Times New Roman 14-point font.

4.    The electronic form of this Brief is identical to the hard copy of the Brief filed with the Third Circuit Court of Appeals and served upon counsel.

5.    The electronic Brief has been checked for viruses using the McAfee anti-virus program and is virus-free.

Dated:  September 7, 2022          BURNS WHITE LLC

                                   By:   */s/ Thomas M. Pohl, Esq.*
                                         Thomas M. Pohl, Esq.
                                         Pa. I.D. No. 208080
                                         *Counsel for Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas M. Pohl, Esq., hereby certify that a true and correct copy of the within Brief for Appellees was electronically filed with the Court and is available for reviewing and downloading on the Court's CM/ECF system.

I further certify that I have forwarded seven (7) hard copies to the Office of the Clerk of Court by depositing the same with next-day courier.

Dated:  September 7, 2022                BURNS WHITE LLC

                                    By:    */s/ Thomas M. Pohl, Esq.*
                                           Thomas M. Pohl, Esq.
                                           Pa. I.D. No. 208080
                                           *Counsel for Appellees*