UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

**CASE NO. 22-1680**

SCOTT STOUFFER,

*Appellant,*

v.

UNION RAILROAD CO., *et al.*,

*Appellees*

**Appeal from the March 14, 2022 Order and Judgment of the United States District Court for the Western District of Pennsylvania (Honorable U.S. District Judge Robert J. Colville), at Civil Action No. 2:20-cv-00133-RJC, Dismissing Plaintiff-Appellant's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6)**

**SUPPLEMENTAL BRIEF OF APPELLEES**

Mary-Jo Rebelo, Esq.
Thomas M. Pohl, Esq.
Courtney C. Brennan, Esq.
BURNS WHITE LLC
48 26th Street
Pittsburgh, PA 15222
Tel.:    (412) 995-3000
Fax:    (412) 995-3300
Email:  mjrebelo@burnswhite.com
        tmpohl@burnswhite.com
        ccbrennan@burnswhite.com
*Counsel for Appellees*

# TABLE OF CONTENTS

**PAGE**

**TABLE OF AUTHORITIES** ...................................................................................ii

**QUESTION PRESENTED BY THE COURT** ..................................................... 1

**ARGUMENT** ........................................................................................................ 1

    A.    Introduction ................................................................................... 1

    B.    Standard of Review ....................................................................... 2

    C.    Railway Labor Act ("RLA") Preclusion ..................................... 3

    D.    Stouffer's Allegations and Corresponding Items Within the CBA ............................................................................... 4

    E.    Last Chance Agreements ("LCAs") Are Grounds For Preclusion ............................................................................... 8

    F.    Jurisdictional Analysis Requires Consideration of Individual Plaintiffs ...................................................................... 9

    G.    Appellant's Focus on the Demerits Policy Alone is Misplaced ................................................................................... 10

**CONCLUSION** ................................................................................................... 10

**CERTIFICATE OF COMPLIANCE** ............................................................... 12

**CERTIFICATE OF SERVICE** ......................................................................... 13

# **TABLE OF AUTHORITIES**

**PAGE**

## **Cases**

*Brown v. Illinois Central Railroad Company*,
  254 F.3d 654 (7th Cir. 2001). ................................................................... 3,4

*Gotha v. United States*,
  115 F.3d 176 (3d Cir. 1997). ....................................................................... 3

*Gould Electronics Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000). .................................................................... 2,3

*Hogan v. Northwest Airlines, Inc.*,
  880 F. Supp. 685 (D. Minn. 1995)............................................................ 3,4

*Malobabich v. Norfolk Southern Corp.*,
  No. 2:11-cv-112, 2011 WL 1791306 (W.D. Pa. May 10, 2011)................ 2,3

*Schilz v. Burlington Northern R.R.*,
  115 F.3d 1407 (8th Cir. 1997). .................................................................... 4

## **Statutes**

29 U.S.C. §§ 621, *et seq.* ("ADEA") .........................................................*passim*

29 U.S.C. § 626(b) (collective action) .............................................................. 1

45 U.S.C. § 151, *et seq.* ("RLA") ...............................................................*passim*

# QUESTION PRESENTED BY THE COURT

The Court has directed the parties to address the following question:

Whether federal court jurisdiction over Appellants' claims against Union Railroad Company, LLC, Transtar, LLC, and United States Steel Corporation under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, as a collective action pursuant to 29 U.S.C. § 626(b), on behalf of himself and others similarly situated, are precluded by the Railway Labor Act, 45 U.S.C. § 151, *et seq.*

<u>Suggested answer</u>:  Yes, Appellants' claims are precluded by the RLA; and, the requisite jurisdictional inquiry prevents collective-action treatment here.

# ARGUMENT

### A.   Introduction

Appellant Scott Stouffer was disciplined and terminated for rules violations and for legitimately accruing excessive demerits under the CBA[1]-governed rules and disciplinary system in place at the railroad at which he had been employed. This culminated with a potentially-catastrophic incident in which Stouffer permitted his train to run through a switch and onto track set for oncoming rail traffic. (A.53, ¶ 91.)

Stouffer is now challenging his railroad-industry discipline and termination. Pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA"), Congress has determined that mandatory arbitration before the Railway Labor Board is the *exclusive forum* for claims like Stouffer's and, accordingly, federal and state courts

---

[1] Collective Bargaining Agreement ("CBA").  (S.A.7-S.A.164.)

lack jurisdiction over such claims. *See id.* Stouffer is challenging demerits, discipline, and termination that fall under the CBA (S.A.7-S.A.164.), as well as the underlying conduct for which the discipline was imposed, which also falls under the CBA. While Stouffer frames his claims as being ADEA claims in order to avoid RLA preclusion, the District Court previously addressed this tactic in *Malobabich v. Norfolk Southern Corp.*, No. 2:11-cv-112, 2001 WL 1791306, at *1 (W.D. Pa. May 10, 2011) (McVerry, J.) (dismissing ADEA complaint for lack of subject-matter jurisdiction, pursuant to the RLA). Here, as described in *Malobabich*, any assessment of Stouffer's claims will mean that "**[t]he Court will unavoidably have to examine the CBA to determine the validity of the claims and the defense asserted by [defendant]**." *Id.* at *3 (emphasis added).

Any litigation of the allegations of supposed discrimination pled within Stouffer's Second Amended Complaint will require examination and interpretation of the CBA, and particularly as to mounting defenses showing that alleged conduct was justified, consistent with the rules, and non-discriminatory in nature.

**B.** **Standard of Review**

This Court's standard of review is plenary where it assesses the subject matter jurisdiction of the federal courts. *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Where, as here, the Court considers a factual attack on the Court's subject matter jurisdiction, the Court may consider evidence

outside the pleadings. *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)); *see also Malobabich*, 2011 WL 1791306 at *1 ("[T]he Court may also consider extraneous evidence submitted by the parties.").

### C. Railway Labor Act ("RLA") Preclusion

In *Malobabich* the District Court found RLA preclusion of an ADEA claim because "[t]he Court will unavoidably have to examine the CBA to determine the validity of the claims and the defense asserted by [defendant]." *Malobabich*, 2011 WL 1791306 at *3. This is consistent with the standard applied by a majority of federal courts. *Brown v. Illinois Central Railroad Company*, 254 F.3d 654 (7th Cir. 2001), is illustrative. For so-called "minor disputes" under the RLA—like Stouffer's—*Brown* explains that "even if [a] claim is grounded upon rights which stem from some source other than the CBA (such as state [or federal] law), the claim will be preempted if it cannot be adjudicated without interpreting the CBA." *Id.* at 658 (citations omitted). *See also id.* at 661-662 (applying RLA preemption to federal ADA claim).

In *Brown*, the CBA included phrases that may have required interpretation in order to fully litigate the case. For example, CBA sections involving "laying off" from work included provisions permitting laying off "for good reason" and a CBA right to "reasonable layoffs." *Id.* at 659. Similarly, in *Hogan v. Northwest Airlines, Inc.*, 880 F. Supp. 685 (D. Minn. 1995), RLA preclusion of an ADA

claim was found because a claim or defense could hinge on interpretation of what constituted an "application" as that term was used in the CBA. *Id.* at 691. In these instances and in others, the need to understand and interpret such CBA terms—*including for purposes of putting on a defense*—led the courts to conclude that the federal discrimination claims were "inextricably intertwined" with provisions of a CBA and thus precluded by the RLA. *See Brown*, 254 F.3d at 662 (quoting *Schilz v. Burlington Northern R.R.*, 115 F.3d 1407, 1415 (8th Cir. 1997)).

**D.** **Stouffer's Allegations and Corresponding Items Within the CBA**

Turning to the allegations set forth within the Second Amended Complaint, however conclusory they may be, it is evident that having to litigate the allegations of discrimination may require both reference to *and interpretation of* the CBA, and particularly with respect to *mounting defenses* that any actions were legitimate, non-discriminatory, and consistent with the CBA and other rules and policies.

Stouffer alleges, for example, that he was subjected to discrimination by being "forced to work shifts that were not property staffed." (A.53, ¶ 90.) There are multiple sections of the CBA that address elements of the staffing of work shifts and that may inform litigation of whether shifts were "properly staffed." (A.53, ¶ 90.) There is, for example, an entire CBA section on the composition of crews. (S.A.91-S.A.102.) This section, *inter alia*, provides a definition of a "standard crew[]," consisting of "a conductor and two brakemen" (S.A.91), but

then sets forth a myriad of deviations (*e.g.*, "[w]ork trains may be manned by a conductor and no brakemen" (S.A.91)). This section of the CBA also includes other staffing elements that are subject to discretion or interpretation of the CBA. For example, certain staffing deviations may occur "as business conditions may warrant." (S.A.91.) This CBA section likewise provides, with respect to "Reduced Crews," that whether to staff certain "second brakeman position[s]" on crews is a decision subject to the "sole discretion" of the railroad. (S.A.93.) Crews may also operate "on a reduced crew basis" in certain instances where a crew member "fails to report for duty," if it is determined that there is an "available" helper to be called. (S.A.98.) "Available" is a term that may require interpretation.

As to proper staffing of crews, the CBA also provides another entire section devoted to addressing temporary crew vacancies and other short-staffing situations. *See* (S.A.32-S.A.35). Involvement of this section of the CBA in an assessment of alleged "shifts that were not properly staffed" (A.53, ¶ 90) may include, as one example, interpretation of the CBA as to when "it is necessary to use regular men to fill trainmen vacancies." (S.A.35.) "Necessary" is a term that may require interpretation.

Stouffer, as noted, alleges that he was subjected to discrimination by being "forced to work shifts that were not property staffed." (A.53, ¶ 90.) Litigation of this "proper staffing" allegation and presentation of defenses showing that staffing

was proper and not discriminatory may well include reference *and interpretation of* these and other CBA provisions that include references to "as business conditions may warrant," "sole discretion," "necess[ity]," "availab[ility]," and other concepts.

Stouffer also alleges that—while his train was involved in a serious and potentially catastrophic safety violation—another of the train's crew was "principally responsible." (A.53, ¶ 91.) Elements of the CBA—including the large swaths discussed above that address crew staffing and the various mixes of conductors, brakemen, and other personnel that may be assigned in various situations—may be relevant with respect to defending against Stouffer's allegation that Stouffer's co-worker on the train crew "was principally responsible for the violation" that led to Stouffer's termination. (A.53, ¶ 91.) Assessment of which crew member is "principally responsible" in a situation potentially implicates issues of train staffing as well as rules concerning movement and procedure. Here again, areas of the CBA may be important to litigating Stouffer's allegations concerning comparative crew responsibility for the incident.

There are other allegations, as well, that Stouffer asserts are discriminatory actions taken against him that may require use and interpretation of the CBA and the rules and policies that it implements in order to mount defenses. For example, Stouffer alleges that he was subjected to discrimination by being "denied meal periods." (A.53, ¶ 90.) The CBA contains a section addressing "meal periods."

(S.A.36-S.A.37.) Items concerning meal periods include elements that are potentially subject to interpretation. For example, the timing and ability to take lunch includes an exception stating "unless instructed by the yardmaster to continue working." (S.A.36.) Another provision addressing instances where the railroad provides lunch includes the modifier "when possible." (S.A.36.) These and other CBA provisions may be relevant to defenses addressing Stouffer's vague allegation that meal periods were discriminatorily denied to him. (A.53, ¶ 90.)

Stouffer also alleges that he was subject to discrimination by being "refused headlamp batteries." (A.53, ¶ 90.) There is a section of the CBA devoted to electric lantern batteries. (S.A.84.) Its contents leave open the possibility that any purportedly discriminatory refusals to provide batteries may involve interpretations as to the applicability of this section of the CBA and interpretations as to whether batteries were being sought for non-work purposes, or whether the batteries were not "worn out," or when "previously issued" batteries were not "turned in." (S.A.84.)

Stouffer also claims that the handling of his own investigation and subsequent discipline is not commensurate with the treatment of younger employees for "substantially similar incident[s]." (A.53, ¶ 89.) The CBA includes a section devoted to investigations and, by extension, matters of discipline. (S.A.62-S.A.63.) Major offenses, which may lead to termination, include "gross

negligence." (S.A.62.) Assessment of this term under the CBA may be needed to compare Stouffer's own actions to those of anyone claimed to have been in incidents "substantially similar" to Stouffer's. (A.53, ¶ 89.)

E.  **Last Chance Agreements ("LCAs") Are Grounds For Preclusion**

Stouffer alleges that so-called "Last Chance Agreements" ("LCAs") were improperly used to target older employees. (A.54, ¶ 97.) The LCAs and their availability and use are, themselves, collectively-bargained-for agreements. Stouffer acknowledges this within his Second Amended Complaint when he pleads that "the use of last chance agreements was specifically *and contractually* limited to employees with substance abuse problems." (A.54, ¶ 97.) This reference to "contract[]" is a reference to collectively-bargained-for agreement between the union and the railroad concerning LCAs. Stouffer's allegation of discrimination with respect to LCAs is that they allegedly were supposed to only be used in substance abuse cases, but that "[i]nstead, the U.S. Steel Defendants began to use the last chance agreements to target Senior Employees," including Stouffer. (A.54, ¶ 97.) Having to litigate and mount a defense as to Stouffer's allegation here will involve litigating the existence, scope, and terms of any collectively-bargained-for agreements between the union and the railroad concerning when and how LCAs may be used. This is an issue of *interpretation* of railroad-industry, collectively-

bargained-for agreements that precludes federal court jurisdiction pursuant to the RLA.[2]

F. **Jurisdictional Analysis Requires Consideration of Individual Plaintiffs**

Stouffer's collective action allegations are that he purports to bring this case on behalf of "all other Senior Employees who were targeted as part of . . . extreme cost-cutting measures, and whose employment was eventually terminated because they were 40 years or older." (A.55, ¶ 108.) Stouffer's putative collective group of plaintiffs is not limited or bounded in any respects as to the circumstances of the individual employee terminations except as to the "40 years or older" element. In other words there is no commonality apart from the "40 years of older" element. This renders this case entirely inappropriate for collective consideration because the analysis of subject matter jurisdiction and how the CBA is implicated may vary with respect to each individual member of the collective.

Stouffer's own individual discipline and termination was based upon a serious safety violation in which Stouffer's train "r[a]n through a switch" (A.53, ¶ 91). The expansive breadth of Stouffer's putative collective group could, however, include employees over the age of 40 that were terminated for incidents

---

[2] It should be noted, as well, that the union (SMART) is an actual *party to* each LCA, in addition to the railroad and the employee. *See, e.g.*, Stouffer's own LCA (S.A.173) ("This [LCA] . . . by and between the Union Railroad Company (herein 'Carrier'), the SMART Transportation Division (herein 'Organization'), and Employee Scott Stouffer (herein 'Claimant'), collectively referred to as 'the Parties,' . . . ."); *see also* (S.A.174) (bearing union SMART's signature).

involving calling and reporting off work. A section of the CBA is dedicated to this topic. (S.A.45-S.A.-46.) Others may have been terminated for incidents involving compliance with physical examination requirements or for issues involving physical examinations. Here again, a section of the CBA is dedicated to this topic. (S.A.122-S.A.123.) The RLA jurisdiction analysis may vary from individual to individual. Any determination that Stouffer's claims are or are not precluded by the RLA does not necessarily mean that the claims of other employees are the same. The jurisdictional analysis is individualized and should be treated as such.

G. **Appellant's Focus on the Demerits Policy Alone is Misplaced**

Appellant focuses his arguments in favor of federal court jurisdiction upon the railroad's demerits policy alone. This does not get around the reality, however, that defenses to Appellant's substantive allegations of discrimination will require interpretation of CBA provisions and of the details of any collectively-bargained-for agreements concerning the usage of LCAs. Appellant is incorrect, however, when he asserts that the railroad demerits policy (S.A.165-S.A.171) is wholly independent of the CBA. The demerits policy falls under the umbrella of the CBA by implementing the rules and policies set forth within the CBA (as confirmed by the provision that, where the two conflict, the CBA governs). (S.A.166).

## CONCLUSION

For the foregoing reasons, this case is precluded by the RLA.

Dated: December 23, 2022	Respectfully submitted,

BURNS WHITE LLC

By: */s/ Thomas M. Pohl*
Thomas M. Pohl, Esq.
Pa. I.D. No. 208080
Mary-Jo Rebelo, Esq.
Pa. I.D. No. 53539
Courtney C. Brennan, Esq.
Pa. I.D. No. 327337
BURNS WHITE LLC
48 26th Street
Pittsburgh, PA 15222
Tel.:	(412) 995-3000
Fax:	(412) 995-3300
Email:	tmpohl@burnswhite.com
	mjrebelo@burnswhite.com
	ccbrennan@burnswhite.com
*Counsel for Appellees*

# **CERTIFICATE OF COMPLIANCE**

1. The undersigned, Thomas M. Pohl, Esq., and Mary-Jo Rebelo, Esq. and Courtney C. Brennan, Esq., are all licensed to practice law in the Commonwealth of Pennsylvania and the Third Circuit Court of Appeals, and are all in good standing.

2. This Brief complies with the type-volume limitations set forth within the Clerk's December 7, 2022 letter directing supplemental briefing (Doc. 35) because it is ten (10) pages or less, excluding the parts exempted from length count under Fed. R. App. P. 32.

3. This Brief complies with the typeface requirements of Circuit Rule 32(a)(1) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word, Microsoft Office 2016, in Times New Roman 14-point font.

4. The electronic form of this Brief is identical to the hard copy of the Brief filed with the Third Circuit Court of Appeals and served upon counsel.

5. The electronic Brief has been checked for viruses using the McAfee anti-virus program and is virus-free.

Dated: December 23, 2022　　　　　　BURNS WHITE LLC

　　　　　　　　　　　　　　　　　By:　*/s/ Thomas M. Pohl*
　　　　　　　　　　　　　　　　　　　Thomas M. Pohl, Esq.
　　　　　　　　　　　　　　　　　　　Pa. I.D. No. 208080
　　　　　　　　　　　　　　　　　　　*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I, Thomas M. Pohl, Esq., hereby certify that a true and correct copy of the within Supplemental Brief of Appellees was electronically filed with the Court and is available for reviewing and downloading on the Court's CM/ECF system.

I further certify that I will timely forward seven (7) hard copies to the Office of the Clerk of Court.

Dated:  December 23, 2022          BURNS WHITE LLC

                            By:   */s/ Thomas M. Pohl*
                                  Thomas M. Pohl, Esq.
                                  Pa. I.D. No. 208080
                                  *Counsel for Appellees*